CHARLES W. WRIGHT

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa November 10, 1881.*

1. INTOXICATING LIQUORS—*sale by druggists without license, prohibited.*
The sale of intoxicating liquor in less quantity than one gallon, by a regular
druggist, even if it be in good faith for medical purposes, without a license
or permit to do so from the proper municipal authorities, is prohibited by
our statute, and any druggist or other tradesman, though not the keeper of
a dram-shop or tippling house, who shall so sell the same without license, is
liable to indictment, though the liquor is bought and sold, and in fact used,
solely for medicinal purposes.

2. STATUTE—*rule of construction.* In construing a new statute on any
subject, it is proper to consider it with reference to the state of the law be-
fore its adoption, and the previous legislation on the same subject.

WRIT OF ERROR to the Appellate Court for the Second
District;—heard in that court on writ of error to the Circuit
Court of Stark county; the Hon. D. McCULLOCH, Judge, pre-
siding.

Mr. M. SHELLENBARGER, for the plaintiff in error, in quite a
lengthy and exhaustive argument, made among others the
following points:

Section 1 of the Dram-shop act, while sweeping in its
terms, making no exceptions in favor of any persons or class
of persons, was not intended to apply to a sale made by a
druggist in good faith for medical and domestic purposes.

Mr. Dwarris says, in his Fifth Maxim: "When statutes are
made, there are some things which are excepted and fore-
prized out of the provisions thereof by the law of reason,
though not expressly mentioned; thus, things for necessity's
sake, or to prohibit a failure of justice, are excepted out of
statutes." Dwarris on Statutes, 123. See, also, Vattel on
Rules of Int. 128–130; Dwarris on Statutes, 144, 145; *Hart*

v. *Kleis*, 8 Johns. 44; *McCarter* v. *Orphan Asylum*, 9 Cow. 437; *Leavitt* v. *Blatchford*, 5 Barb. 13; *People* v. *New York Central R. R. Co.* 13 N. Y. 81; *Holmes* v. *Corby*, 31 Barb. 289; *Commonwealth* v. *Kimball*, 24 Pick. 370; *Pearce* v. *Atwood*, 13 Mass. 343.

As to further instances of a construction to avoid a wrong, or particular hardship, or to prevent an absurd consequence, and to promote right, see *People* v. *Utica Ins. Co.* 15 Johns. 358; 1 Kent's Com. 462; *Bryan* v. *Buckmaster*, Breese, 408; 3 Scam. 160; *Zarresseller* v. *People*, 17 Ill. 101; *Burgett* v. *Burgett*, 1 Ohio, 221.

It can not be supposed the legislature intended to make it criminal, and punishable by fine and imprisonment, for a regular druggist to fill a physician's prescription, or even sell without license, when necessary to save life, or in other extreme cases, and yet the statute makes no express exceptions. Other courts have, by construction, supplied exceptions in proper cases.   See *Dowell* v. *State*, 2 Ind. 658; *Thomason* v. *State*, 15 id. 449; *Haber* v. *State*, 19 id. 457; *Jakes* v. *State*, 42 id. 473; *Ball* v. *State*, 50 id. 595; *State* v. *Wray*, 72 N. C. 253; *Hooper* v. *State*, 56 Ind. 153.

Mr. B. F. THOMPSON, State's Attorney, for the People:

1.   Where the terms of the statute are general, and no exceptions are made for medicinal purposes, no necessity of the purchaser to use the liquor, even if prescribed by a physician as an indispensable medicine, and there is no person in the county with authority to sell, will protect the vendor.   *Commonwealth* v. *Sloan*, 4 Cush. 52; *Commonwealth* v. *Kimball*, 24 Pick. 366.

2.   Unless there be an express exception in the statute, the fact that the liquor was sold for a medicine is no defence. *Phillips* v. *State*, 2 Yerger, 358; *State* v. *Whitney*, 15 Verm. 298; *State* v. *Chandler*, 15 id. 425; *State* v. *Brown*, 31 Maine, 522; *State* v. *Hall*, 39 id. 107.

3.   The Indiana courts, it is true, hold that a druggist may, upon a proper occasion, *bona fide* and with due caution, retail liquors to be used merely as a medicine.   But the courts of that State also hold that the prosecutor must prove that the defendant had no license (*Sheaver* v. *State*, 7 Blackf. 99); that the defendant is not responsible for sale to a minor, if the minor looked like, or represented himself to be, an adult, or his family, or the community, treated him as of age (*State* v. *Kalb*, 14 Ind. 403); that the principal is not responsible for the sales made by his clerk, without his knowledge or consent (*Lathrop* v. *State*, 51 Ind. 192), and many other like opinions upon the "liquor question," which are contrary to the decisions of this court, and inconsistent with the spirit and policy of the laws of this State.

4.   As to rule of construction, see *Way* v. *Way*, 64 Ill. 406; Potter's Dwarris on Statutes, 188; *Biggs* v. *Clapp*, 74 Ill. 335; *Scott* v. *Reed*, 10 Pet. 524.   And as particularly applicable to the construction of our statute forbidding the sale of liquor without license, Bishop on Stat. Crimes, sec. 1019; *State* v. *Wray*, 72 N. C. 253; *State* v. *Larrimore*, 19 Mo. 391; *State* v. *Gummer*, 22 Wis. 442; *State* v. *Downer*, 21 id. 274.

5.   And if the sale is made in good faith for lawful purposes, the burden of proof is on the defendant to show that fact.   *Gunnarsshon* v. *City of Sterling*, 92 Ill. 569; *Harbaugh* v. *City of Monmouth*, 74 id. 356; *State* v. *Wray*, 72 N. C. 253; *State* v. *Wray*, 1 Am. Cr. R. 480.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Charles W. Wright was convicted at the March term, 1879, of the Stark county circuit court, for the selling of intoxicating liquors without a license, and on error to the Appellate Court for the Second District that conviction was affirmed. Thereupon the plaintiff sued out the present writ of error, and the case is now here for review.

Plaintiff in error admits the selling of intoxicating liquors without a license, but insists that under the circumstances he incurred no criminal liability in doing so. The evidence shows that at the time of the sales for which the indictment was preferred, plaintiff in error was a regular druggist, doing business in Toulon, Stark county, and we think the weight of evidence clearly establishes the fact that these sales were made by him as such druggist without any intention of violating the Criminal Code, and that the liquors so sold by him were in good faith bought, sold and used for medical purposes only; and the question presented for our determination in this case is, do these facts constitute a defence to the indictment.

The answer to this question depends upon the construction which must be given to sec. 2 of chap. 43, of the Revised Statutes, entitled "Dram-shops," the title of the act being, "An act to provide for the licensing of, and against the evils arising from, the sale of intoxicating liquors." The first section defines a dram-shop to be "a place where spirituous, vinous or malt liquors are retailed in less quantity than one gallon," and declares that "intoxicating liquors shall be deemed to include all such liquors, within the meaning of the act." The second section then provides: "Whoever, not having a license to keep a dram-shop, shall, by himself or another, either as principal, clerk or servant, directly or indirectly, sell any intoxicating liquors in any quantity less than one gallon, or in any quantity to be drunk on the premises, or in or upon any adjacent room, building, yard, premises or place of public resort, shall be fined not less than $20 nor more than $100, or imprisoned in the county jail not less than ten nor more than twenty days, or both, in the discretion of the court."

It is conceded by counsel that the sales of intoxicating liquors proven against the accused fall within the letter of this section, and that if it is to be enforced according to the

9—101 ILL.

literal import of the terms used, the accused was properly convicted; but it is earnestly, and with much force of reasoning, contended, that notwithstanding the comprehensive and sweeping terms of this section it was only intended to apply where intoxicating liquors are sold as a beverage,—or in other words, it is claimed that in the construction of the section, an exception is to be understood or supplied which will exclude from its operation all sales made in good faith by druggists or other tradesmen, in the regular course of business, for purely medical, mechanical, or other like purposes. That such exceptions are sometimes implied and given effect in the construction of statutes, even where the language is clear and unambiguous, as in the present case, is not to be denied; but this latitude of construction is never permissible except where, in order to avoid imputing to the legislature highly improbable or absurd purposes, it must be presumed that such construction was intended.

The whole controversy, therefore, in the present case, resolves itself into this: Did the legislature intend that an exception of the kind we have just stated is to be understood and supplied in construing and giving effect to the section in question? That there is no express declaration of such intention, either in the section itself, or in other parts of the act, is not pretended; hence, if it exists at all, it must be deduced either from matters apparent upon the face of the act, or from extrinsic considerations, or in part from both. Although counsel for plaintiff in error has favored the court with a very elaborate and able argument, devoted almost exclusively to this question, yet he nowhere in it claims there is anything upon the face of the act indicating such intention, and we may, therefore, fairly presume nothing of the kind exists, otherwise he would have directed the attention of the court to it. We have, however, with a view of ascertaining for ourselves, carefully examined the various provisions of the act, and from such examination have no hesitancy in saying

nothing can be found in it evidencing such intention. On the contrary, we find in the enumeration contained in the seventh section of the act, of the places where liquors are sold in violation of the provisions of the second section, drug stores,—not mere pretended drug stores, as counsel would have it,—are specifically mentioned, and all such places are expressly declared to be nuisances. This clearly shows that druggists, as a class of dealers, were not inadvertently over-looked by the legislature, but, on the contrary, were in the legislative mind at the very time of the adoption of the act, and the seventh section expressly denounces a penalty against them, as possible violators of its provisions.

If, then, the legislature intended, as is claimed, the act should not apply to sales made by druggists for medicinal or other like purposes, it was certainly a very opportune time, when declaring their establishments nuisances for selling liquors in contravention of the act, to have expressly declared that its provisions were not intended to extend to that class of cases, and the very fact that no such declaration was made, under the circumstances stated, we regard as evidence strongly tending to show that nothing of the kind was intended.

It is universally conceded that one of the most efficient means in ascertaining the legislative intent in the adoption of a new statute is to consider it with reference to the state of the law before its adoption, and particularly with reference to the previous legislation on the same subject. A passing notice, therefore, of some of the previous legislation with respect to the granting of licenses for the sale of intoxicating liquors, may aid us somewhat in our present inquiries.

It will not be necessary to go back further than the act of 1845. This act contained an absolute prohibition against the sale of intoxicating liquors in a less quantity than one quart, without a license. Like the present statute, it contained no saving clause with respect to druggists. (Sec. 132,

Rev. Stat. 1845.) In 1851, the legislature passed an act popularly known. at that time as the "quart law," abolishing the license system altogether, and prohibiting absolutely all sales of spirituous liquors in a less quantity than one quart. It was, however, provided, by the sixth section of that act, that its provisions should not extend to druggists or physicians who should sell or give away liquors, in good faith, for purely medical, mechanical or sacramental purposes. Now, it is but fair to presume that the legislature, in adopting this act, understood the act of 1845 to extend to such sales as are specified in the sixth section of the act of 1851, and that the latter act would also, in like manner, extend to such sales without some express provision taking them out of its operation, otherwise it would not have been deemed necessary to adopt the sixth section, and the legislature is not to be presumed as ever doing an unnecessary and useless act. We regard this important, as showing the legislative understanding upon this question. (Laws of 1851, p. 18.) In 1853, the legislature passed an act repealing the act of 1851, and also another act restoring the license system, and all laws relating to that subject which were in force at the time of the adoption of the act of 1851. (Laws of 1853, pp. 91, 153.)

Neither the repealing act, nor the act restoring all former laws on the subject, contained any provision continuing in force the exemption in favor of druggists and physicians, and by no subsequent legislation has such exemption been reënacted or otherwise recognized. We are not authorized to say the dropping, by the legislature, of this provision in favor of druggists and physicians, out of the statute, was merely accidental. On the contrary, we must assume that it was purposely done. And if such is the fact, the only rational object the legislature could have had in doing so was to place druggists and physicians upon the same footing with all other persons with respect to the retail of intoxicating liquors. After the acts of 1853 the law remained without

any substantial change till 1872, when there was a general revison of the law on the subject. The act of 1872 remained in force until in March, 1874, when the legislature passed what is known as the "Dram-shop act," which, with the exception of one or two amendments not affecting the present inquiry, is the same act now in force. Neither the act of 1872, nor the present act, as we have already seen, contains any exception in favor of druggists or any other class of persons.

Again, in the general Incorporation law, relating to incorporated cities and villages, the municipal authorities are expressly given the power to grant permits authorizing druggists to sell intoxicating liquors by the retail. Now, if druggists did not fall within the general inhibition on this subject, what necessity would there have been for conferring this power of granting permits upon the municipal authorities? We can see none whatever. This provision must, therefore, be regarded as tending strongly to show that the legislature understood the Dram-shop act to extend to druggists, as well as other persons.

The argument upon which counsel chiefly relies, and presses upon the court in vigorous terms, and with an unusual degree of confidence, is drawn largely from what are assumed to be the objects and purposes of the act, and in this connection great significance is given to the particular phraseology of its title, and the legislative use of the term "dram-shop." It is said, in substance, that the act, as shown by its title, is intended to suppress the evils arising from tippling, which "are drunkenness, debauchery, idleness, crime, destitution, loss of health, property, character," etc.; that drunkenness, from which this train of evils flows, is chiefly contracted at tippling houses and dram-shops, and hence it is concluded that the "whole statute is leveled at dram-shops." If, as is claimed, the entire statute is directed against dram-shops and tippling houses, of course it would

logically follow that a sale by a druggist for purely medical purposes would not fall within the provisions of the act. However plausible this argument may appear, yet upon a close examination of the premises from which it is drawn we are of opinion it is not sound. It seems to us undue importance is given to the term "dram-shop," as used in the act. Now, if the act had, in general terms, simply prohibited the selling of intoxicating liquors without a license to keep a dram-shop, and had not defined what was intended by that term, then it would be but reasonable to presume the legislature used the term in the sense of tippling houses, for this is, without doubt, its popular meaning, and in that event the argument of counsel drawn from the use of that term would seem just and proper. But such is not the case. The legislature having, in the first place, expressly defined what was meant by the term, its meaning or application can not, by any sound rule of construction, be extended by reference to its popular signification.

In determining, therefore, what, if any, importance should be attached to the use of the term, we should keep in view its meaning as defined in the act, and exclude from our consideration altogether its popular meaning, at least so far as it differs from the statutory definition. By doing so, the force of the argument drawn from the use of the term "dram-shop" will be greatly impaired, if not altogether destroyed, for if by the use of that term, as the language of the act defining a dram-shop clearly indicates, the legislature meant any place where liquors are sold in less quantities than a gallon, any well provided drug store as fully answers that description as a tippling house, for all regular druggists are daily and almost hourly in the habit of selling liquors in that way.

For the purpose of keeping in the background the popular idea of a dram-shop, let us suppose, by way of illustration, the legislature, instead of using the term "dram-shop" at all, had, wherever that term occurs, used in its stead the

definition given of it in the act. Thus, commencing with the second section: "Whoever, not having a legal license to keep a place where spirituous or vinous or malt liquors are retailed in less quantity than one gallon, shall, by himself or another, sell any intoxicating liquors," etc. Had the act been thus drawn, we presume no one for a moment would ever have seriously doubted that druggists, who are constantly in the habit of retailing liquors in less quantities than a gallon, would be bound to take out license before they could legally sell; and yet the case supposed does not at all differ in principle from the one before us.

It may be admitted that the chief ulterior object of the act in question was to mitigate and diminish, as far as possible, the great train of evils that flows from the immoderate use of intoxicating liquors; but the immediate object of the act was to regulate the retail traffic in liquors, rather than to suppress it altogether, without regard to the business callings of those who might happen to be engaged in it, and as a secondary consideration at the same time provide means for defraying at least a portion of the expenses of local municipal government. Long experience has shown that the license system is reasonably efficient for the accomplishment of both these purposes. At any rate, nothing better, so far, seems to have been discovered. In order to properly regulate the retail traffic in liquors, it is important that the officers who are entrusted with the duty of enforcing the law relating to it should be able to know definitely all persons, without distinction, who are engaged in the business, and all places where it is permitted to be carried on. Without such knowledge on their part, it would be utterly impossible to efficiently discharge their duties and see the law faithfully executed. Under the license system this very essential information is always at hand. A few moments examination of the municipal records will enable any one who has an interest in knowing, whether one who appears to be engaged in the business is a legitimate

dealer or not, and by this means the whole retail traffic may be easily and properly regulated. But let it be once understood that the druggist or other tradesman, merely because his chief business is confined to traffic in other classes of merchandise, may retail intoxicating liquors *ad libitum,* so long as he in good faith sells for some legitimate purpose other than as a mere beverage, the chief safeguards which the law, as now understood, throws around the subject will soon be frittered away, and the doors will be thrown wide open to all manner of frauds and evasions of the law, which would bid defiance to the highest degree of watchfulness and diligence the officers of the law could possibly bring to the official discharge of their duties, in endeavoring to enforce the law on the subject. If the druggist may sell for sickness, the family grocer may, on the same principle, sell for culinary purposes, and there is no telling where the thing would stop. The only safe course is to enforce the law as the legislature has made it, and not defeat its execution upon some hypothetical theory of public policy that finds no place or recognition in the act itself. If the legitimate business of druggists or other tradesmen necessarily involves the retail of liquors in small quantities, we see no reasons, founded upon public policy or otherwise, why they should not, like other dealers, pay for the privilege of doing so. This construction, moreover, compels all persons who engage in the traffic to equally contribute to the support of local municipal government. The contrary construction would be discriminating between individuals engaged in the same business, with respect to the burdens of local government, without any sufficient reason for doing so. The municipal authorities of cities and villages incorporated under the general incorporation law, may, however, subject to certain restrictions provided by ordinance, thus discriminate, if they think proper to do so, by granting to druggists permits for the sale of liquors for medicinal, mechanical, sacramental and chemical

purposes only; but where this has not been done, druggists are placed upon the same footing in this respect with other dealers.

It is claimed, however, that the views here expressed are in conflict with the decisions in Indiana and North Carolina, construing statutes similar to our own. In construing a statute, so much depends upon other legislation bearing upon the same subject, it is often difficult to determine, with any degree of certainty, the value of a decision upon a mere statutory question. Again, sometimes, where two statutes are in the main alike, there may be slight differences in some portions of the acts, which will lead to different conclusions in construing them, and yet both be right. Without stopping to inquire whether this is so in the present case or not, it is sufficient to say that the conclusion reached by us in this case is, by other authorities of equal respectability, fully sustained. 2 Wharton on Crim. Law, (8th ed.) secs. 1506, 1507; *State* v. *Gummer*, 22 Wis. 442; *State* v. *Downer*, 21 id. 274.

But the question, however, is not a new one in this court. *Noecker* v. *The People*, 91 Ill. 494, was in all its material features like the one before us. That, like the present case, was a prosecution, by indictment, against a druggist for selling liquor without a license in a less quantity than one gallon, where the evidence tended to show the sales were made by him in good faith, for purely medicinal purposes. Under this state of facts the court below was asked to instruct the jury, that if they found from the evidence the sales were so made, they should find the defendant not guilty, which the court refused to do, and on a review of the case in this court the ruling of the circuit court in refusing the instruction was held proper, and the conviction sustained.

Thus, it will be perceived, the question is clearly settled by the case just cited, and we might have simply contented ourselves with a reference to that case; but in deference to

the very able argument of counsel for plaintiff in error, we have deemed it not improper to reconsider some of the grounds upon which that decision rests.

*Judgment affirmed.*