1pi 449
2pi 523

# THE DRUGGIST CASES.

## (*Nashville.* February 21st, 1887.)

1. DRUGGISTS. *When, and when not, liable for tax as liquor dealers.*

Acts construed: 1870, Ch. 51 (Code (T. & S.), §§ 696 *a* and *b*); 1881, Ch. 149; 1882, Ch. 5 (3d ex. sess.); 1883, Ch. 106 (Code (M. & V.), § 617); 1885, Ch. 5 (ex. sess.)

Upon a construction of all the acts pertaining to sales by druggists of alcoholic or vinous liquors, the Court announced the following conclusions:

*First*—That no druggist, simply because he uses alcoholic or vinous liquors in the compounding of tinctures, essences, or other preparations is, therefore, subject to the tax of a liquor dealer.

*Second*—That no druggist selling compounds, tinctures, essences, perfumery, or other preparation of which either alcohol, wine, or other liquor is a component part, subjects himself to the tax imposed on liquor dealers; unless such sale is a mere sham or subterfuge to evade the law concerning sales of liquors.

*Third*—That prior to the Act of 1885, Ch. 5 (ex. sess.), a druggist might, in good faith, sell wine for communion purposes, or fill the prescription of a regular practicing physician for either alcoholic or vinous liquors without paying the tax on liquor dealers; but at no time since the Act of 1870, Ch. 51, has it been lawful for him to sell for medical purposes, without such prescription.

Cases cited and approved: Phillips *v.* The State, 2 Yer., 458; Harper *v.* The State, 3 Lea, 211; Newman *v.* The State, 7 Lea, 617; 15 Vt., 298; 39 Me., 522; 101 Ill., 126; 36 Ark., 36; 72 Mo., 297; 38 Am. Rep., 346; 24 Pick., 366.

*Fourth*—Since the Act of 1885, Ch. 5 (ex. sess.), it has not been lawful for a druggist to sell, without paying the tax on liquor dealers, either spirituous or vinous liquors for any purpose whatever, upon prescription or otherwise, "except wine for sacramental purposes."
(See authorities cited above.)

*Fifth*—That druggists, who sell liquors, otherwise than in the excepted cases, under the Acts of 1870 and 1885, must take out license, give bond, take the oath, and pay tax as regular liquor dealers.

Cases cited and approved: Newman *v.* The State, 7 Lea, 617; Harper *v.* The State, 3 Lea, 211.

*Sixth*—That druggists selling liquors contrary to the Acts of 1870 and 1885, and without license, are subject not only to the tax imposed on liquor dealers, but also to indictment for each sale.

2. STATUTES.   *Construction of revenue laws.   Double tax.*
A safe and sound rule of construction of revenue laws is to hold, in the absence of express words disclosing a different intent, that they are not intended to subject the same property to be twice charged for the same tax, nor the same business to be twice taxed for the exercise of the same privilege.
Case cited and approved: Bell *v.* Watson, 3 Lea, 328.

3. SAME.   *Same.   Re-enactment.   Repeal.*
Where an act prohibiting the sale of liquors by druggists, except in certain specified cases, is substantially re-enacted by a subsequent statute *omitting some of the exceptions* of the former act, and containing a clause repealing all laws in conflict; the omitted exceptions stand repealed both expressly and by necessary implication.

4. WITNESS.   *Criminating self.   Misdemeanor barred by statute of limitations.*
Where a witness, who has made unlawful sales of liquors, is protected from prosecution therefor by the statute of limitations, he cannot refuse to testify to the fact of such sales on the ground that his testimony would criminate himself.

5. SAME.   *Same.   General exceptions.*
The testimony of a witness to facts criminating himself, will not be excluded on a *general* exception thereto; nor will it be held incompetent in any case unless it appears that the witness himself, at the time he was examined, claimed his exemption on the ground that his answers would criminate himself, and was nevertheless compelled to testify.
(See Muller *v.* State, 11 Lea, 18.)

6. PENALTIES.   *Equity will not enforce.*
The penalties imposed by § 873 (M. & V.) Code, upon persons exercising any privilege, without obtaining license, cannot be enforced in equity; but only by strict pursuance of the statutory remedy by distress warrant.
(See Code, § 873 (M. & V.); § 704 (T. & S.)

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson-County. A. G. MERRITT, Ch.

Attorney - General PICKLE and J. B. DANIEL, for State.

TAYLOR & WOODALL for Davidson County.

EAST & FOGG, and DEMOSS & MALONE, for Druggists.

LURTON, J.    These five separate causes, inasmuch as they all turn upon the same legal questions, have been heard together.    The defendants are retail druggists, doing business in the city of Nashville.    The bills are filed by the State and the county of Davidson, for the purpose of collecting the privilege tax imposed by law upon retail liquor dealers for the years 1881, 1882, 1883, 1884, and 1885.    The bills charge that the defendants, during each of these years, sold spirituous and vinous liquors without taking out the license and paying the tax imposed upon retail liquor dealers, and that they are indebted for the amount of such tax, and for the penalties and interest imposed by law.    The defendants, in effect, insist that they are not liquor dealers in the sense of the law, and that, having taken out license and paid all the taxes imposed upon them as merchants, they are not liable to the tax upon liquor dealers; that these sales of liquors have been within the legitimate scope of their business as retail druggists, and only for medicinal uses.    The cases involve the determination of the question as to how far a retail druggist may handle or deal

in spirituous or vinous liquors without subjecting himself to the penalties for the violation of the law prohibiting the sale of intoxicating liquors without the license required by law. That whisky, brandy, and wine are included in the list of remedial agents by pharmacopœias and works upon *materia medica* does not at all determine the question.

That it is within the power of the State to regulate the sale of liquor, and confine its sale to those specially licensed by law, is not controverted by the learned counsel who represent defendants. It is clearly within the police power of the State to determine who and under what circumstances such sales shall be made. Says Judge Cooley on this question:

"Those statutes which regulate or altogether prohibit the sale of intoxicating drinks as a beverage have also been by some persons supposed to be in conflict with the Federal Constitution. Such of them, however, as assume to regulate merely, and to prohibit sale by other persons than those who are licensed by the public authorities, have not suggested any serious question of constitutional power. They are but the ordinary police regulations, such as the State may make in respect to all classes of trades or employments." Cooley's Constitutional Limitation, side page, 581.

This brings us to the inquiry as to whether the legislation of this State has in any way defined the extent to which druggists might deal in spir-

ituous or vinous beverages. The first statute having reference to druggists in this connection, is the Act of January, 1870, which is as follows (T. & S. Code, § 696 *a* and *b*):

"SECTION 1. *Be it enacted, etc.,* That hereafter all regularly licensed druggists in this State, without obtaining an additional license therefor, be, and they are hereby, authorized to furnish vinous liquors to any church officer, to be used for sacramental or communion purposes; *or to fill the prescription of a regular practicing physician prescribing spirituous or vinous liquors as a medicinal remedy.*"

"SECTION 2. That the sale, or gift, of any spirituous, vinous, or malt liquors, by any druggist in this State, *except as provided in the first section* of this act, shall be *unlawful,* and subject the person so offending to all the *penalties now prescribed by law for selling liquors without license.*"

It is unnecessary to determine whether before this statute druggists had a legal right, under the ordinary license of a merchant, to sell liquors even as a medicine. This act clearly defined and limited the extent to which they could thereafter deal in such liquors without taking out, in addition to their license as druggists, a license as retail liquor dealers. In clear and positive language they were permitted to sell wines and spirits in just two cases—to a church officer for communion purposes and upon the prescription of a physician as a medicinal remedy. The sale or

The Druggist Cases.

gift for any other purpose, or upon any other au-
thority, is distinctly declared unlawful.

The statute having prohibited all sales or gifts,
except as expressly provided, no other exception
can be grafted on. The sale for mechanical, sci-
entific, or medicinal uses, except upon a physi-
cian's prescription, became clearly unlawful, and an
infringement upon the business of the licensed re-
tail liquor dealer. A sale, even for medicinal pur-
poses, unless upon prescription, was as unlawful
as for any other use, u less such sale was made
by a licensed liquor dealer. Statutes similar to
this are in existence in a number of States, and
sales by druggists, for medical purposes, held clearly
unlawful. *State* v. *Whitney*, 15 Vt., 298; *State* v.
*Brown*, 39 Maine, 522; *Wright* v. *People*, 101 Ill.,
126; *Woods* v. *State*, 36 Ark., 36; *State* v. *Fer-
guson*, 72 Mo., 297.

A sale for necessary medical uses, by one not
having a license, was held unlawful by the Su-
preme Court of this State. *Phillips* v. *State*, 2
Yer., 458.

The exercise of a privilege for which a license
is required, and upon which a tax is imposed,
subjects the person to the payment of the tax,
and to punishment as a misdemeanor in most cases.
This is clearly so where liquor is sold without
license. The liability of defendants to pay the
tax placed upon retail liquor dealers becomes ab-
solute when they made such sale, whether specially
mentioned in the annual revenue bills of the State

or not. From 1870 down to 1882 druggists are not specially alluded to in the revenue legislation, but in 1882 the Revenue Act of 1881 was amended in these words: "*Be it further enacted,* That Section 4 of said act be so amended as to make the paragraph providing for the taxation of liquor dealers apply to all druggists who retail liquors under existing laws." The contention of the State is that druggists, who should thereafter sell liquors for communion purposes, or upon the prescription of a physician, should pay a liquor dealer's tax. We do not think this the true meaning of this amendment. The Act of 1870 had prohibited the sale by druggists of liquors, except in the two cases provided for by the act, without obtaining license; this amendment simply provides that if druggists shall sell liquors, other than as provided or permitted by the Act of 1870, and under the existing laws applicable to retailing liquors, that they shall pay the same tax as other retail liquor dealers. As before stated, this legislation, and that of 1883, was wholly unnecessary to subject druggists who sold other than as permitted by the Act of 1870, to the tax imposed on retail liquor dealers.

The Revenue Act of 1883, after providing the amount of tax imposed on retail liquor dealers, concludes as follows: "*And the provisions of this Act shall apply to all druggists.*" The literal construction of this act would subject druggists to the payment of the tax upon liquor dealers

whether they sold liquors or not. Was this the intention of the Legislature? We do not think so. The druggist was already subjected to the privilege tax imposed upon all merchants, and we cannot believe that the Legislature intended that he should pay another privilege tax unless he exercised such additional privilege. This Court, speaking through Judge Cooper, in the case of *Bell* v. *Watson*, 3 Lea, 328, said: "A safe and sound rule of construction of revenue laws is to hold, in the absence of express words disclosing a different intent, that they are not intended to subject the same property to be twice charged for the same tax, nor the same business to be twice taxed for the exercise of the same privilege."

This is the plain, common sense view of the question, and, applying it to the legislation under consideration, we hold that the Act of 1883 did not subject a druggist to the payment of the tax imposed upon retail liquor dealers unless he sold liquors contrary to 'the provisions of the Act of 1870. We now come to the Act of 1885 providing revenue for the State. This act, after fixing the amount of tax imposed upon retail liquor dealers, concludes as follows:

"And the above tax on liquor dealers applies to all druggists, *except in case of wine for sacramental purposes.*"

The concluding section of this Revenue Act of 1885 is as follows:

"SEC. 8. *Be it further enacted,* That all laws or parts of laws in conflict with this Act be, and the same are hereby, repealed."

The meaning of this act is plain. All druggists who shall sell liquors are required to pay this tax and comply with the law regulating the sale of liquors, if they shall sell liquors "*except for sacramental purposes.*" If they do not sell for any other than sacramental purposes, they are not subject to this tax. The necessary effect of this act is to repeal so much of the Act of 1870 as permitted a druggist to sell upon the prescription of regular practicing physicians for medicinal purposes. The Act of 1870 is in direct conflict with this act to this extent, and is therefore to this extent repealed, both by necessary implication as well as by the terms of the last section of the act repealing all laws or parts of laws in conflict. The result is that from and after the passage of this Act of 1885 no druggist could sell wines, brandies, whisky, or any other intoxicating beverage, without he paid the tax and took out the license of a retail liquor dealer, except he sold wines for sacramental purposes. This cut off absolutely the sale upon prescription of a physician, which we have seen, when made in good faith, had been permitted without additional license. It follows that any druggist thereafter selling for other than sacramental uses subjected himself to the payment of this additional license tax, as well as to all the penalties prescribed by law for the

sale of liquors without license. The hardship of
such restriction upon the business of druggists fur-
nishes no reason for engrafting upon the law ex-
ceptions other than that expressly named in the
law. Sales for medicinal purposes, but not upon
the prescription of a regular physician, were clearly
unlawful under all the legislation from 1870 down,
and by this Act of 1885 sales upon prescription
are likewise made unlawful; for this tax upon
retail liquor dealers is imposed upon all druggists
who sell liquors for any purpose or use, "*except
in case of wine for sacramental use.*"

The very frequent and notorious evasions of the
privilege accorded of selling upon prescription un-
doubtedly led to the Act of 1885. No exception
is made in the law, save a sale for sacramental
purposes. The only course for this Court is to
enforce the law as the Legislature has made it,
and not defeat its execution upon the hypothetical
theory that public policy requires exceptions to be
made which are not found in the act. Said the
Supreme Court of Illinois in a similar case:

"If the legitimate business of a druggist or
other tradesman necessarily involves the retail of
liquors in small quantities, we see no reason,
founded upon public policy or otherwise, why they
should not, like other dealers, pay for the privi-
lege of doing so. This construction, moreover,
compels all persons who engage in the traffic to
equally contribute to the support of the local gov-
ernment. The contrary construction would be dis-

criminating between individuals engaged in the same business, with respect to the burdens of the government, without any sufficient reason for doing so." *Wright* v. *The People,* 101 Ill., 126.

The Supreme Court of Alabama said, in a case involving much the same question:

"It was contended under this state of facts that if the appellant gave or sold the bitters in question as a prescription and in good faith, he will not come within the prohibition of the statute, and should be acquitted. We know of no principle of law which would authorize us to incorporate so important an exception into the statute." *Carson* v. *State,* 38 Am. Rep., 346.

Chief Justice Shaw, in answer to an argument that a sale strictly for medicinal purposes was allowable, said:

"That if it were sufficient to avoid the prohibition of the statute for the purchaser to say that the spirit was intended for medicine, it would in effect repeal the statute. But the decisive answer is that the Legislature has made no such exception." *Commonwealth* v. *Kimball,* 24 Pick., 366.

The Act of 1870, and the legislation subsequent to its enactment, has more than once been construed by this Court. In the case of *Harper* v. *State,* 3 Lea, 211, in construing the law as it stood before the Act of 1885, Judge Turney said concerning the Act of 1870:

"Taking the two sections together, and reading as the Legislature intended them, their interpreta-

tion is, that selling (by a druggist) or giving spir-
ituous, vinous, or malt liquors, except upon the
prescription of a practicing physician, shall subject
the offender to all the penalties now prescribed by
law for selling liquor without license."

In the case of *Newman* v. *State*, 7 Lea, 617,
this Court, speaking again through Judge Turney,
held that druggists are within the terms of the
act requiring all persons selling liquor to take an
oath not to mix or adulterate the same, and are
indictable for selling without taking the oath. The
objection that druggists could not be within the
meaning of the act requiring dealers in liquor to
take the oath against adulterations, because they
are necessarily required to mix and compound, is
fully met by the sixth section of the Act of
'1859–60, requiring that "it shall not be so con-
strued as to prevent druggists, physicians, and per-
sons engaged in the mechanical arts from mixing
or adulterating liquors for medical or mechanical
purposes." 7 Lea, 618.

These decisions are referred to for the purpose
of showing that the construction of the law ap-
plicable to the sale of liquors by druggists since
the Act of 1870 is in harmony with the view we
have announced. The conclusions reached by us
upon a view of all the legislation bearing upon
this question is:

*First*—That no druggist, simply because he uses
alcoholic or vinous liquors in the compounding of

tinctures, essences, or other preparations is, therefore, liable to the tax of a liquor dealer.

*Second*—That no druggist selling compounds, tinctures, essences, perfumery, or other preparation of which either alcohol, wine, or other liquor is a component part, subjects himself to this tax, unless such sale is a mere evasion of the law, a sham and subterfuge to evade the law concerning sales of liquors. The contrary of these propositions has not been pressed by either the very able and industrious special counsel representing the State or by the Attorney-General, nor are the bills framed for any such purpose. No sound mind could conceive that either the sale or preparation of the ordinary remedies known to the pharmacopœia, when such preparations are not intended as an evasion of the law, made a druggist a liquor dealer, or subjected him to such tax.

*Third*—Prior to the Act of 1885 a druggist might, in good faith, sell wine for communion purposes, or fill the prescription of a regular practicing physician for either alcoholic or vinous liquors; but at no time since the Act of 1870 has it been lawful for him to sell without such prescription, even for medicinal purposes.

*Fourth*—Since the Act of 1885 it has not been lawful for a druggist .to sell spirituous or vinous liquors for any purpose whatever or upon prescription, " except wine for sacramental purposes."

*Fifth*—The sale of liquors contrary to the Act of 1870 and of the Act of 1885 subjected all

druggists to the necessity of taking out the license of a retail liquor dealer, giving bond as such, and taking the oaths required of such dealers.

*Sixth*—The failure to take such additional license by a druggist selling contrary to the Acts of 1870 and 1885, subjects him to the payment of the tax upon suit of the State, as well as an indictment for each sale.

We come now to the application of the law, as thus construed, to the facts in these cases. Before this can be done a question of evidence must be disposed of. In each case the State has called as a witness one or more of the defendants, and they have been examined at length as witnesses for the State as to the character of their sales of liquor during each of the years of 1881, 1882, 1883, 1884, and 1885. It is insisted that inasmuch as the unlawful sale of liquor subjects the defendants to indictment, that the defendants cannot be compelled to criminate themselves by answering. This objection is a valid objection so far as the principle of law invoked is concerned; but the objection is not applicable to the facts of this case, nor was it properly raised.

The sale of liquor without license was a misdemeanor, and the sales about which defendants were examined were barred by the statute of limitations at the time defendants were examined. Not being liable to a prosecution for the misdemeanor about which they were examined, the objection is bad. Wharton on Evidence, Section 540.

The objection made by defendants, as shown by the record, is a general objection to the question. No reason is given. In order to be available, the witness must himself, at the time he is examined, claim his exemption, and upon the ground that his answer would criminate himself. This was not done.. A general objection was made. The witness is not shown to have *answered* only because compelled. Only in such case could the answer be afterward suppressed. Wharton on Evidence, Section 535, and authorities cited.

The evidence of defendants is therefore competent, and the action of the Chancellor in overruling their objections was correct. It is unnecessary to distinguish these cases one from another; for it is clearly shown that each of defendants have in each of the years 1881, 1882, 1883, 1884, and 1885 openly sold both spirituous and vinous liquors without any regard to having a prescription of a regular practicing physician. It is true that to some extent an effort was made to sell only for medicinal purposes; but such sales, before the Act of 1885, were valid only when made in good faith and upon prescription. Each of defendants procured the liquor dealer's license required by the United States Government and paid the tax required by Federal law. Doing the character of business they did, they were equally bound to take out the liquor dealer's license required by the State and pay to it the tax required from retail liquor dealers. Failing to do this, they are

each liable for the full amount of the tax of 1881, 1882, 1883, 1884, and 1885 both for the State and county, and for this a decree will be rendered, with interest from time each tax was due.

The State having elected to sue for this tax as a debt, and in the Chancery Court, we think it cannot recover the penalties which might have been recovered by pursuing the statutory remedy of distress warrant. These penalties can only be enforced by strict pursuance of the statutory remedy given for their collection. The decree of the Chancellor will be affirmed except as to the tax of 1881 and the interest upon each tax. Defendants will pay all costs.