ment on the second cause of action is affirmed, with leave to the defendant to withdraw its demurrer and answer. Settle order on notice.

DOWLING, J., concurs.

SCOTT, J. [1, 2] I concur in the result arrived at by Justice McLAUGHLIN, but as to the first cause of action I place my concurrence upon the fact that plaintiff did not pay the $3,750, which the injured person offered to accept. I do not understand that clause K of the contract would have stood in the way of such a payment. It does not absolutely forbid the insured to incur expenses or settle a claim without the written consent of the company, but merely provides that he may not so incur or settle, "except at his own cost." In other words, if he did incur expense or pay a sum in partial settlement, without the consent of the company, he could not recover the amount from the insurer. But if such payment would not increase the company's liability, or enhance its difficulties in defending the action, it would not amount to a breach of the contract.

CLARKE, P. J., and LAUGHLIN, J., concur.

---

(173 App. Div. 199)

## MEYER v. MAYO.

(Supreme Court, Appellate Division, First Department. June 2, 1916.)

1. BREACH OF MARRIAGE PROMISE ⬳22—EVIDENCE—ADMISSIBILITY.

In an action for damages for breach of promise to marry, questions asked defendant in examination before trial, as to whether he had known persons named, and had lived or was in places named, on dates named, tending to prove an alleged former marriage, were pertinent and material.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 31–36; Dec. Dig. ⬳22.]

2. WITNESSES ⬳296—PRIVILEGE OF WITNESS—ANSWER TENDING TO DISGRACE.

A witness may be compelled to answer a material and relevant question, although the answer may tend to disgrace him, or bring him into disrepute.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1021–1025; Dec. Dig. ⬳296.]

3. WITNESSES ⬳308—PRIVILEGE OF WITNESS—ANSWER TENDING TO REVEAL CRIME—STATUTE.

Under Code Civ. Proc. § 837, providing that a witness is not required to give an answer which will tend to accuse himself of crime, the use of the word "constitutional," in an order of the court, to describe this privilege, was improper, since the constitutional privilege, given by Const. art. 1, § 6, is: "Nor shall he be compelled in any criminal case to be a witness against himself."

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1065–1067; Dec. Dig. ⬳308.]

4. WITNESSES ⬳308—PRIVILEGE OF WITNESS—STATUTE.

Under Code Civ. Proc. § 523, providing that verification of pleading may be omitted where it is not otherwise specially prescribed by law, where the party pleading would be privileged from testifying as a witness

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

concerning an allegation or denial in the pleading, in an action for breach of promise to marry, where defendant refused to answer questions before trial tending to prove an alleged former marriage,. because of a claim of privilege, if he desired to put the plaintiff to her proof, and still save his privilege, he could have done so by an unverified answer.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1065–1067; Dec. Dig. ☞308.]

5. WITNESSES ☞297—PRIVILEGE OF WITNESS—STATUTE.

Under Code Civ. Proc. § 837, providing that a competent witness shall not be excused from answering a relevant question on the ground that it may subject him to a civil suit, but that this provision does not require a witness to give an answer which will tend to accuse himself of crime, if the statute of limitations has run against the crime committed, and no indictment has been found, the claim of privilege does not apply, and the witness may be required to answer.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1011, 1026–1037; Dec. Dig. ☞297.]

6. WITNESSES ☞308—PRIVILEGE OF WITNESS.

Where a witness claims a privilege, the question of his right to do so is a proper matter for judicial determination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1065–1067; Dec. Dig. ☞308.]

7. BREACH OF MARRIAGE PROMISE ☞21—EVIDENCE—ADMISSIBILITY.

In an action for damages for breach of promise to marry, plaintiff is not confined to reputed wealth in proving defendant's property, but may prove the actual facts and particular items of property by examination of the defendant before trial, since such evidence is not alone admissible, but is best evidence.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 28–30, 34; Dec. Dig. ☞21.]

8. BREACH OF MARRIAGE PROMISE ☞21—EVIDENCE—ADMISSIBILITY.

In an action for damages for breach of promise to marry, plaintiff is entitled to prove the estate of the defendant from the date of the promise until the date of the commencement of the action.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 28–30, 34; Dec. Dig. ☞21.]

Appeal from Special Term, New York County.

Action by Wilhelmina Meyer, otherwise known as Wilhelmina Mayo, against Virginus St. Julian Mayo. From an order directing defendant to answer certain questions, which he had declined to answer on examination before trial, he appeals. Order modified, as indicated in opinion, and, as modified, affirmed.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH, and PAGE, JJ.

James W. Osborne, of New York City, for appellant.
Edwin R. Leavitt, of New York City, for respondent.

PAGE, J. The action is to recover damages for a breach of promise to marry. The facts, as alleged in the complaint and the affidavit to procure the order for the examination, are as follows:

[1] On November 20, 1903, defendant promised to marry the plaintiff, and on April 2, 1904, a marriage ceremony was performed by a minister, and thereafter the parties cohabited as man and wife for

11 years, when on or about March 9, 1915, the plaintiff discovered that at the time of the promise and the marriage ceremony the defendant had been married, that the wife of the former marriage was living, and that the said marriage was in full force and effect. On the examination the defendant was asked:

"Did you know a Miss Florence Weeks? Were you ever married to a Miss Florence Weeks? Did you ever know a Rev. G. M. Colville? Did you ever know a man by the name of L. H. Beach? Did you ever know a Miss M. S. Hard? Did you ever live at Evanston, near the city of Chicago, Ill.? Were you in the city of Scranton, Pa., in the year 1900?"

To each of these questions the witness declined to answer and refused to assign any reason. The referee certified the questions to the court. Each of these questions may be assumed to tend to prove the former marriage of the defendant, and were therefore pertinent to the issue and material. The only justification for a refusal to answer, that was presented by defendant's counsel, was that the answer would tend to incriminate the defendant.

[2] The refusal to answer such a question is a privilege secured to a witness by section 837 of the Code of Civil Procedure. It has been repeatedly held that this is a personal privilege, that may be waived, and is waived unless the privilege is claimed. Therefore the order of the Special Term that the defendant shall be required to answer the questions "or assert on the record that he claims his constitutional privilege on the ground that answering said questions will tend to degrade or incriminate him, in which case said defendant need not answer said questions," sufficiently protects his rights. In fact, it goes beyond the requirements, for a witness may be compelled to answer a material and relevant question, although the answer may tend to disgrace him, or bring him into disrepute. It is only where the inquiry is as to collateral, immaterial, or irrelevant matter that the witness can be excused from answering a question on the ground that it would have a tendency to degrade him. The provision of the Code of Civil Procedure (section 837) is applicable, that "a competent witness shall not be excused from answering a relevant question. * * * But this provision does not require a witness to give an answer which will tend to accuse himself of a crime or misdemeanor or to expose him to a penalty or forfeiture." The constitutional privilege is merely:

"Nor shall he be compelled in any criminal case to be a witness against himself." N. Y. State Const. § 6, art. 1.

[3-6] The word "constitutional" is not accurately used, and should be eliminated from the order. The defendant in his verified answer has denied the facts which his counsel claims would tend to incriminate him. If he desired to put the plaintiff to her proof, and still save his privilege, he could have done so by serving an unverified answer. Code Civ. Proc. § 523. But assuming, as counsel has, that his denial under oath is false, and that the witness will claim his privilege, it does not necessarily follow that he may not be required to answer the questions. If there was performed a ceremonial marriage between the parties to this action on April 2, 1904, and the defendant then had a wife of a former marriage living, and said marriage is still valid and

subsisting, the statute of limitations has run against the crime he then committed. That being the case, the claim of privilege does not apply. The rule and the reason therefore are clearly stated by Professor Wigmore:

"The law is concerned with its own penalties only. Legal criminality consists in liability to the law's punishment. When that liability is removed criminality ceases, and with the criminality the privileges. * * * A crime erased by time no longer exists. There is, therefore, no criminal fact to be privileged from exposure. A legal limitation of the time of prosecution is in effect an expurgation of the crime, and after the lapse of the time fixed by law the privilege ceases." Wigmore on Evidence, § 2279.

This rule has been recognized by the courts of this state (People v. Mather, 4 Wend. 229, 254, 21 Am. Dec. 122; Close v. Olney, 1 Denio, 319; Moloney v. Dows, 2 Hilt. 247, 262; Wolfe v. Goulard, 15 Abb. Prac. 336; Henry v. Salina Bank, 1 N. Y. 83), but not in such a manner as to constitute a binding precedent. It has been recognized and enforced in other jurisdictions. Weldon v. Burch, 12 Ill. 374; Lamson v. Boyden, 160 Ill. 613, 619, 43 N. E. 781; Calhoun v. Thompson, 56 Ala. 166, 28 Am. Rep. 754; Childs v. Merrill, 66 Vt. 302, 29 Atl. 532; So. Ry. News Co. v. Russell, 91 Ga. 808, 18 S. E. 40; Currier v. Concord R. R., 48 N. H. 332; In re Druggist Cases, 85 Tenn. 449, 3 S. W. 490; Floyd v. State, 7 Tex. 215; United States v. Smith, Fed. Cas. No. 16,332. If, however, an indictment had been found within the statutory time (Code Crim. Proc. §§ 142, 143), the defendant would not be freed from liability. Therefore we cannot hold that the mere lapse of the statutory time of limitation is sufficient, but it must also appear that an indictment had not been found. This the plaintiff may do, to show that the statute has in fact run and that no privilege exists. I am of opinion, therefore, that the order should be modified, by striking out "said defendant need not answer said questions," and inserting in place thereof, "the referee shall certify the questions and the defendant's refusal to the court," so that the matter may be disposed of in accordance with the facts; and if it shall then appear that the statute has in fact run, the defendant may be required to answer.

This disposition of the case does not contravene the decisions of this state which have declared:

"The witness who knows what the court does not know, and what he cannot disclose without accusing himself, must in such cases judge for himself as to the effect of his answer, and if, to his mind, it may constitute a link in the chain of testimony, sufficient to convict him, when other facts are shown, or to put him in jeopardy, or subject him to the hazard of a criminal charge, trial, or indictment, he may remain silent." People ex rel. Taylor v. Forbes, 143 N. Y. 219, 230, 38 N. E. 303, 306.

As explained in that case:

"The weight of authority seems to be in favor of the rule that the witness may be compelled to answer when he contumaciously refuses, or when it is perfectly clear and plain that he is mistaken, and that the answer cannot possibly injure him, or tend in any degree to subject him to the peril of prosecution." 143 N. Y. 231, 38 N. E. 306.

In the instant case, prima facie, the answers to the questions cannot possibly tend to incriminate the defendant, for the reasons heretofore

given, and therefore, if he claims his privilege, the question of his right to do so is a proper matter for judicial determination.

[7] The defendant was asked, "Will you state what patents you did own?" to which he answered, "That will be impossible." The counsel for defendant evidently has presented his objection, to the court at Special Term, to any inquiry as to the defendant's property on the ground that only the defendant's general reputation as to his means is admissible, citing Kniffen v. McConnell, 30 N. Y. 285, and Chellis v. Chapman, 125 N. Y. 214, 26 N. E. 308, 11 L. R. A. 784.

In Kniffen v. McConnell it does not appear whether the amount of defendant's property was shown by general reputation or by specific evidence of his property and the value thereof. Objection was taken to the admissibility of the evidence, but upon what ground does not appear. The court said (30 N. Y. 298):

"The objection in the case was not to the mode of proof, but to the admissibility of that kind of evidence. It may be objectionable to particularize the defendant's property, and such evidence should be confined to general reputation as to the circumstances of the defendant. To that extent I think it admissible"

—and the judgment was affirmed. In Chellis v. Chapman, supra, evidence of the defendant's general reputation for wealth at the time of the agreement of marriage was admitted. The court said:

"I apprehend, however, that the difficulty in the question before us of the evidence is not so much in adducing proof as to defendant's pecuniary means, as in the mode of their proof. But, assuming, as I think we are bound to do under the authorities, that the amount of defendant's property is material in such an action, their evidence of the reputation which he enjoys for wealth is unobjectionable. Reputation is the common knowledge of the community, and if it is exaggerated, or incorrect, the defendant has the opportunity to correct it and of giving the exact facts, upon the trial." 125 N. Y. 221, 26 N. E. 310, 11 L. R. A. 784.

While these cases sustain the reception of evidence of the defendant's reputation for wealth, I do not understand that they sustain the defendant's contention that the evidence must be confined to reputation and—

"that the particular items of property the defendant had at any time is wholly inadmissible, and that the plaintiff should be limited in her proof in regard to the defendant's reputation."

The intimation in the case last cited that it was competent for the defendant to show the exact facts, in contradiction of the reputed facts, would show that such facts were not alone admissible, but were the best evidence that could be adduced. The reputation of the defendant for wealth might measure the plaintiff's expectations and be competent to show her disappointment. The true measure of damages is not that alone, but, as was said in Chellis v. Chapman, supra, 125 N. Y. 219, 26 N. E. 309, 11 L. R. A. 784:

"That the amount of the suitor's * * * means is a factor of some importance in the case of a demand of marriage cannot fairly be denied. It is a circumstance which very frequently must have its particular influence upon the mind of a woman, in determining the question of consent or refusal, and, as I think, in a proper case, very naturally * * * so. The ability of the man to support her in comfort and the station in life, which

marriage with him holds forth, are matters which may be weighed, in con-nection with an agreement to marry."

In that regard his actual ability to support and maintain the plaintiff would seem to be the prime consideration. She cannot live on the reputed wealth. The difficulty of plaintiff proving the actual wealth may make the reputation for wealth admissible. But if plaintiff can prove the actual facts, such evidence is not alone admissible, but is the best evidence. This was distinctly held in Crosier v. Craig, 47 Hun, 83, affirmed without opinion, Crozier v. Same, 130 N. Y. 661, 29 N. E. 1034. This latter case does not conflict with the two prior cases, but recognizes that:

"Evidence of the reputed amount of the defendant's property may not be incompetent, because in most cases accurate knowledge of the amount is confined to the defendant and his friends, yet it cannot be incompetent to permit the amount in defendant's possession to be shown by direct and precise evidence, greatly superior in probative force to evidence of reputation, which is often nothing but  *  *  *  rumor founded upon little or no knowledge of the facts." 47 Hun, 85.

[8] As to the limitation as to the time of the inquiry regarding defendant's property, I think the plaintiff is entitled to.prove the estate of the defendant during the time that he might have reasonably been expected to fulfill his agreement. That would be from the date of the promise until the date of the commencement of the action, October 23, 1915, but not since that time.

The order should be modified, as indicated in this opinion, and as modified, affirmed, with $10 costs and disbursements to the respondent. Settle order on notice. All concur.