(March 14, 1963)

DOROTHY WOLF, as Ancillary Executrix of NATHAN D. WOLF, Deceased, et al., Respondents-Appellants, v. JACOB GOLD, Respondent, and ANNA GOLD, Appellant-Respondent.

MEMORANDUM BY THE COURT. Judgment in this action for libel and slander, in favor of plaintiffs against defendant Anna Gold for $60,000, and dismissing the complaint as against defendant Jacob Gold, affirmed, on the opinion of Mr. Justice COLEMAN at Special and Trial Term, with costs to plaintiffs-respondents against defendant Anna Gold, and without costs to defendant Jacob Gold. In light of the dissenting opinion by Mr. Justice McNALLY, comment additional to that contained in the opinion rendered by the trial court is merited. It is evident that the trial court held, correctly, that, in the first instance, a case had been made out against defendant Jacob Gold and that a bare circumstantial case had been made out against both defendants with respect to the letters, sufficient to merit weighing the proof as a question of fact. The trial court, however, concluded that, as the fact-finder in this nonjury case, it was not persuaded that defendant Jacob Gold was proven responsible for the slander or that it was clear enough that the letters had emanated from either or both of the defendants. This the fact-finder was empowered to conclude, even though, prima facie, a case had been made out. In short, where the ultimate facts must be found only by inference from uncontradicted evidentiary facts, the fact-finder must still be persuaded that the inferences are merited (*George Foltis, Inc.*, v. *City of New York*, 287 N. Y. 108, 118; 9 Wigmore, Evidence [3d ed.], § 2494; cf. *Hull* v. *Littauer*, 162 N. Y. 569, 572–574). While this court might have sustained a contrary conclusion, the views of the Trial Justice, reached after careful and deliberate consideration supported by equally careful elaboration, are entitled to weighty consideration. The trial court's opinion (N. Y. L. J., July 12, 1962, p. 5, col. 8) negates any failure to apportion the proper weight to the various elements contained in the record.

McNALLY, J. (dissenting). The amended complaint heretofore sustained (9 A D 2d 257) alleges 13 causes of action against both defendants; one by both plaintiffs for an injunction restraining defendants from continuing with a conspiracy to destroy the business and reputations of plaintiff Wolf's decedent and plaintiff hospital, and for damages; in behalf of plaintiff executrix, one in slander and five on libels; for plaintiff hospital, one in slander and five on libels.

The publication and falsity of the defamatory statements are beyond dispute. Defendant Anna Gold has been found liable on the two causes of action for slander and exonerated on the remaining 11 causes. Her husband, the codefend-

ant Dr. Jacob Gold, has been completely vindicated. Neither the record nor the decision sustains the judgment for defendants.

Prior to 1958 Doctors Wolf and Gold were actively engaged in the practice of medicine and operated Crown Heights Hospital, now Lefferts General Hospital, Inc., in the Borough of Brooklyn, New York City. The stock was owned equally between the two doctors and their respective families. Despite the close professional relationship, and over an extended period, considerable animosity existed between the two doctors which occasionally flared into open violence.

In February, 1958 Dr. Gold offered Dr. Wolf his interest in the hospital for $525,000. Dr. Wolf accepted. The contract of sale was executed February 12, 1958 and the transaction closed on February 28, 1958.

On February 15, 1958 Mrs. Gold arranged a conference between a member of the hospital staff and Dr. Gold held that day at the latter's home. Dr. Gold then advanced a plan to solicit the financial aid and assistance of 40 physicians towards the end of creating a fund of $200,000 to acquire the hospital after its value had been depressed by a boycott on the part of the 40 physicians. The evidence of the proposal was credited by the trial court and aptly described as "a dastardly scheme to destroy its [the hospital's] financial standing so that he, Dr. Gold, might be able to repurchase the hospital at a depressed value". The conferee promptly rejected the proposal as reprehensible.

The trial court found that Mrs. Gold, on May 6, 1958, uttered the slander alleged in the second and eighth causes. The libels were published September 18, October 20, November 3, November 18 and December 10, 1958. The trial court found the libels and slander similar in content; that the libels were the product of the same machine; and that the established specimens of typewritten letters signed by Mrs. Gold and the typed libels had similarities, one of which was concededly rare. The trial court also found ill-will and motivation on the part of Mrs. Gold with reference to Dr. Wolf. Defendants did not testify at the trial. The trial court, however, was not satisfied as to the source of the libels.

This action was instituted January 13, 1959. Dr. Wolf died September, 1960. His executrix was substituted by order dated February 21, 1961.

The cause for an injunction and damages was dismissed because of a change of circumstances since the alleged misconduct and the commencement of the action. These are the death of Dr. Wolf in September, 1960; the sale by the Wolf family of the hospital stock in June, 1959; and the cessation of the defamations since the commencement of the action. The issues of fact of the cause for conspiracy were not resolved. Hence the dismissal was as a matter of law. (*Scheuer* v. *Scheuer,* 308 N. Y. 447, 450.) Assuming in the circumstances it was within the judicial discretion to withhold injunctive relief, the conspiracy cause should not fail. Plaintiffs' right to damages should have been adjudicated (*Dudley* v. *Congregation of Third Order of St. Francis,* 138 N. Y. 451, 459), inclusive of the right to and extent of punitive damages. (Cf. *I. H. P. Corp.* v. *210 Central Park South Corp.,* 16 A D 2d 461.)

If the slander was uttered with the authority, knowledge and consent of Dr. Gold, he is liable therefor. (*Crane* v. *Bennett,* 177 N. Y. 106.) There is no finding as to the presence or absence of such authority, knowledge or consent.

In the disposition of the factual issues the resolution of a common legal question is unclear. Defendants did not testify on the trial. During pretrial interrogations directed to their liability for the publication of the defamatory statements, defendants asserted their privilege against incrimination. The trial court's decision, in part, is as follows: "I accepted the letters, prima facie, and I repeat, there was not testimony from the defendants. Notwithstanding that I do not find, I cannot find as a fact that the letters were defendants'. It is not enough to invoke technical procedural rules and to say that a prima

facie case having been made out (it should be borne in mind that there was no jury), the ultimate fact to be established must be taken as having been established merely because the defendants 'who are in a position to come forward' failed to do so. I put aside the question of the defendants' supposed privilege against testifying and any consequent inability to draw an unfavorable inference from their failure to testify. I am to be satisfied that they wrote the letters and I am not so satisfied; the testimony against them is too slender."

The rule is that the party withholding evidence enables the strongest inferences against him deriving from the record. (*Noce* v. *Kaufman*, 2 N Y 2d 347.) Defendants asserted their constitutional privilege against incrimination during their pretrial examinations. Through their attorney they reasserted the privilege on the trial. The most recent of the defamatory statements was published December 10, 1958. The trial commenced February 17, 1962, more than three years since. Criminal libel is a misdemeanor. (Penal Law, §§ 1340, 1341.) The statutory limitation on a prosecution therefor is two years. (Code Crim. Pro., § 142.) No other possible incrimination is indicated. The assertion of the privilege is not enough to shield a defendant or a witness when it appears the incrimination relates to a crime against which the Statute of Limitations has run. (*Brown* v. *Walker*, 161 U. S. 591, 598; *Meyer* v. *Mayo*, 173 App. Div. 199; *Matter of Cappeau*, 198 App. Div. 357.) Moreover, assuming the privilege, in a civil case an inference may be drawn against a party from his refusal to testify under a claim of privilege. (*Bradley* v. *O'Hare*, 2 A D 2d 436, 442; 8 Wigmore, Evidence [McNaughton Rev.], § 2272, p. 439.)

The record suggests that the trial court's concern with defendants' constitutional privilege against incrimination may have militated against plaintiffs to the extent that the inferences naturally flowing from the record evidence were truncated.

In a nonjury case this court may make additional necessary findings. (*Weidman* v. *Klot*, 11 A D 2d 641.) On this record, however, there is no basis for additional findings sustaining the judgment for the defendants. On the contrary, as I view the record plaintiffs are entitled to judgment against both defendants on all causes of action.

Breitel, J. P., Rabin, Eager and Bastow, JJ., concur in Memorandum by the Court; McNally, J., dissents in opinion.

Judgment affirmed, etc.