## In re STANDARD OAK VENEER CO.

(District Court, E. D. Tennessee, N. E. D. June 21, 1909.)

1. CORPORATIONS (§ 682*) — FOREIGN CORPORATIONS — SOLVENCY—ADMINISTRATION OF ASSETS—STATE STATUTES—VALIDITY.

Acts Tenn. 1877, p. 45, c. 31, § 5, authorizing foreign corporations to do business within the state, and providing that, while the property of such corporations shall be liable for debts as the property of natural persons, resident creditors shall have priority in the distribution of assets, or subjection of the same, or any part thereof, to the payment of debts, over all simple contract creditors, while constitutional, as an exercise of the state's power to prescribe conditions on which a foreign corporation might enter its territory, in so far as it gave the claims of Tennessee creditors priority over those of other foreign corporations, was unconstitutional in so far as it attempted to give the claims of Tennessee creditors of a foreign corporation doing business within the state priority over those of natural persons.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2662; Dec. Dig. § 682.*]

2. CORPORATIONS (§ 682*)—FOREIGN CORPORATIONS—DISTRIBUTION OF ASSETS—PRIORITY.

Acts 1877, p. 45, c. 31, § 5, giving Tennessee creditors of a foreign corporation doing business in that state priority over the claims of other nonresident corporations in the distribution of the corporation's assets, gives Tennessee creditors a constitutional priority in the distribution of the assets of a foreign corporation over other foreign corporations likewise engaged in business in Tennessee in compliance with its statutes, where such foreign corporation has retained its principal place of business in the state of its creation, especially where its claim is based on transactions conducted through such foreign office.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2662; Dec. Dig. § 682.*]

3. CORPORATIONS (§ 682*)—FOREIGN CORPORATIONS—DISTRIBUTION OF ASSETS—COMPLIANCE WITH STATE LAWS—EFFECT.

Acts Tenn. 1877, p. 44, c. 31, authorizing foreign corporations to do business within the state, as amended by Acts Tenn. 1891, p. 264, c. 122, and Acts Tenn. 1895, p. 123, c. 81, did not make a foreign corporation doing business in Tennessee, on compliance with such act, a de facto resident of that state, with all the rights of a domestic corporation, in such a sense as to make it a Tennessee creditor, within Acts Tenn. 1877, p. 45, c. 31, § 5, giving resident creditors priority in the distribution of the assets of a foreign corporation.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 682.*]

4. CORPORATIONS (§ 634*)—EXISTENCE—DOMICILE.

A corporation can have no legal existence outside the boundaries of the sovereignty by which it is created, and must dwell in the place of its creation, though its residence in one state creates no insuperable objection to its power to transact business in another, provided the laws of such other state permit it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2497–2502; Dec. Dig. § 634.*]

5. CONSTITUTIONAL LAW (§ 43*) — FOREIGN CORPORATIONS — BUSINESS WITHIN STATE—STATUTES—CONSTITUTIONALITY.

A foreign corporation, having complied with Acts Tenn. 1877, p. 44, c. 31, and its amendments, authorizing foreign corporations to do business in Tennessee under certain circumstances, subjected itself to the jurisdiction of the state in accordance with the terms prescribed by such act, and hence could not object that section 5, giving to natural resident persons

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

priority in the distribution of the assets of a foreign insolvent corporation, was unconstitutional, as a denial of the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 43.*]

6. CORPORATIONS (§ 682*)—FOREIGN CORPORATIONS—INSOLVENCY—PROTECTION OF RESIDENT CREDITORS—NATIONAL BANKS—RESIDENCE.

Under Rev. St. § 5134 (U. S. Comp. St. 1901, p. 3454), providing that the articles of association of a national bank shall state the place where its operations are to be carried on, designating the state, territory, or district, and the county, city, town, or village, a national bank, the articles of which fixed its principal place of business at Johnson City, Tenn., should be regarded as a resident of that state, within Acts Tenn. 1877, p. 45, c. 31, § 5, giving to resident creditors of an insolvent foreign corporation priority in the payment of debts over all other creditors.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 682.*]

7. BANKRUPTCY (§ 9*)—STATE LAWS—VACATION.

The rule that the enactment of the federal bankruptcy act superseded all state insolvency or bankruptcy laws relating to persons or acts declared by Congress to be subjects of bankruptcy, applied merely to the administration of the state laws in proceedings in the state courts, and did not prevent the enforcement in federal bankruptcy proceedings of general priorities recognized by the state laws and conferred by state statutes as substantive rights, not depending on the resort to particular remedies accessible only in proceedings in the state courts, and where such priorities are not in conflict with the express priorities declared by the bankruptcy act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 9.*]

8. BANKRUPTCY (§ 9*)—STATE STATUTES—INSOLVENCY LAWS.

Acts Tenn. 1877, p. 45, c. 31, § 5, conferring on resident creditors priority in the distribution of assets of foreign corporations doing business in Tennessee, was not a state insolvency law, but a statute prescribing conditions on which foreign corporations might do business within the state, and was therefore not superseded or affected by the bankruptcy act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 9.*]

9. CORPORATIONS (§ 682*)—FOREIGN CORPORATIONS—INSOLVENCY—PROTECTION OF RESIDENT CREDITORS.

Claims by receivers of a foreign corporation for expert accountant's services rendered to a foreign insolvent corporation doing business in Tennessee was a claim due to the receivers personally, and not to the corporation for whom they acted, within Acts Tenn. 1877, p. 45, c. 31, § 5, giving to resident creditors of a foreign corporation priority of payment over claims due to foreign corporations.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 682.*]

In Bankruptcy. On petition of the receivers of William E. Uptegrove & Bro. to review order of referee.

J. Norment Powell, for City Nat. Bank.
Johnson & Miller, for receivers.

SANFORD, District Judge. I am of the opinion that the referee correctly held that in the administration of the estate of the bankrupt, the Standard Oak Veneer Company, a New York corporation engaged in business in Tennessee in compliance with chapter 31, p. 44, of the Acts of 1877, and its amendments, the claim of the City National Bank of Johnson City, a corporation under the national banking act, with its place of business at Johnson City, Tenn., was, under section 5 of the act of 1877, entitled to priority over the claim of the receivers

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of William E. Uptegrove & Bro., a New York corporation, which had also complied with the act of 1877 and its amendments; both the bank and the Uptegrove Company being simple contract creditors of the bankrupt, and the claim of the Uptegrove Company arising under loans made to the bankrupt from the New York office of the Uptegrove Company, where its principal office or place of business was located.

The act of 1877 provides (section 5, p. 45) that, while the property of all foreign corporations coming under its provisions shall be liable for debts as the property of natural persons:

"Nevertheless, creditors who may be residents of this state shall have a priority in the distribution of assets, or subjection of the same, or any part thereof, to the payment of debts over all simple contract creditors. * * *"

In Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432, it was held that, while this provision of the act was unconstitutional in so far as it gave the claims of Tennessee creditors of a foreign corporation priority over those of natural persons who were citizens of other states, it was a constitutional exercise of the power of the state to prescribe the conditions upon which a foreign corporation might enter its territory for purposes of business, in so far as it gave the claims of Tennessee creditors priority over those of other foreign corporations not doing business in Tennessee under the act, or under any statute directly bringing them within the jurisdiction of the courts of Tennessee.

I am of opinion that it likewise gives Tennessee creditors a constitutional priority in the distribution of the assets of a foreign corporation over other foreign corporations likewise engaged in business in Tennessee in compliance with its statutes, where such foreign corporation has retained its principal office and principal place of business in the state of its creation, and where its claim is based upon transactions conducted through such foreign office. Without determining whether a foreign corporation engaged in business in this state, which had established its principal office and place of business in the state, might be regarded as a de facto resident of Tennessee in such sense as to make it a Tennessee creditor, within the meaning of the act of 1877, as to claims arising in the conduct of such business in Tennessee, I think it clear that it was not intended by the Tennessee statutes that a foreign corporation complying with the terms of the statute before doing business in Tennessee should thereby become de jure a Tennessee corporation within the meaning of the act of 1877, so as to place it on an equality with Tennessee creditors in all claims arising against another foreign corporation doing business in Tennessee under that act and its amendments.

While I do not think the determination of this question is necessarily controlled by the cases holding that foreign corporations which have complied with similar statutes do not cease to be citizens and residents of the states of their original creation within the meaning of statutes regulating the jurisdiction of Circuit Courts of the United States, the real question being solely one of intention of the Tennessee Legislature as expressed in the statutes in question, yet, after careful consideration of these statutes, I find no expression of intention that a foreign corporation complying with their requirements should thereby

ipso facto at the same time acquire a new residence in Tennessee and lose its original residence in the state of its creation, so as to share with Tennessee creditors of another corporation in the priorities given in favor of Tennessee creditors and against foreign creditors. In Blake v. McClung, 172 U. S. 239, 247, 19 Sup. Ct. 165, 168, 43 L. Ed. 432, the Supreme Court said:

"Looking at the purpose and scope of the Tennessee statute, it is plain that the words 'residents of this state' refer to those whose residence in Tennessee was such as indicated that their permanent home or habitation was there, without any present intention of removing therefrom, and having the intention, when absent from that state, to return thereto—such residence as appertained to or inhered in citizenship."

It is true that in the act of 1877 it was provided (section 3, p. 45) that foreign corporations complying with the act "shall be deemed and taken to be corporations of this state, and shall be subject to the jurisdiction of the courts of this state, and may sue and be sued therein in the mode and manner * * * directed in the case of corporations created or organized under the laws of this state," and that in the amendment of 1891·(Acts 1891, p. 264, c. 122) it was again provided in section 4 "that when a corporation complies with the provisions of this act it shall then be, to all intents and purposes, a domestic corporation, and may sue and be sued in the courts of this state, and subject to the jurisdiction of the courts of this state just as though it were created under the laws of this state." However, in the amendment of 1895 (Acts 1895, p. 123, c. 81) section 4 of the act of 1891 was amended so as to read as follows:

"That when a corporation complies with the provisions of this act, said corporation may then sue and be sued in the courts of this state, and shall be subject to the jurisdiction of this state as fully as if it were created under the laws of the state of Tennessee."

The significant feature of this amendment is that the previous provision of the act of 1891 that a corporation complying with its provisions should become, "to all intents and purposes, a domestic corporation," was omitted.

Construing the original act of 1877 and its amendments in their entirety, and in the light of the title of the act of 1877, describing it as an act to declare the terms on which foreign corporations may carry on business, and purchase, hold, and convey property in this state, and in view of the amendment of 1895, omitting the earlier provision that such foreign corporations shall become, to all intents and purposes, domestic corporations (the Uptegrove Company having complied with this act, it is to be noted, in 1898, three years after the passage of the amendment of 1895), I think it clear that it was not intended that a foreign corporation, by complying with these acts, should necessarily acquire a "permanent home or habitation" in this state, or be treated as a domestic corporation for other purposes than that of jurisdiction in the courts of the state, and that it was not intended that such foreign corporation, upon compliance with the acts, should become, ipso facto, a domestic corporation for all purposes, and should thereby, as a matter of law, both acquire a residence in Tennessee and lose its foreign residence, so as to entitle it to share in the assets of other foreign cor-

porations on an equality with Tennessee creditors under section 5 of the act of 1877.

In Shaw v. Quincy Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768, the Supreme Court, after quoting the statement in Bank of Augusta v. Earle, 13 Pet. 519, 588, 10 L. Ed. 274, that "a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created," and "must dwell in the place of its creation, and cannot migrate to another sovereignty," although "its residence in one state creates no insuperable objection to its power of contracting in another," said:

"This statement has been often reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home, the domicile, the habitat, the residence, the citizenship of the corporation can only be in the state by which it was created, although it may do business in other states whose laws permit it."

Not only is there nothing in any of the Tennessee acts which indicates any intention to deprive the foreign corporations complying with their requirements of their original, inherent, and inalienable character as foreign corporations and residents of the states of their original creation, but, on the contrary, the provision of section 5 of the act of 1891 (page 265) that, when such corporation has no agent in this state upon whom process may be served, it may be proceeded against by an attachment to be levied upon its property and publication as in other attachment cases, indicates affirmatively that the Legislature did not contemplate that by a mere compliance with the terms of such statute the foreign corporation would acquire a residence in this state or necessarily have a resident agent herein, and hence provided that in such cases it might be proceeded against by attachment substantially as in the case of a nonresident.

I therefore hold that the Uptegrove corporation, by complying with the Tennessee statutes, did not thereby, by operation of law, become a Tennessee corporation and resident of the state within the meaning of the provision of the act of 1877 relating to the distribution of the assets of other foreign corporations similarly situated. I furthermore hold, under the facts in this case, that, not having become de jure a resident of the state, it did not become de facto such resident, even if a foreign corporation having an inherent and inalienable residence in the state of its creation could ever become at the same time a de facto resident of this state within the meaning of the act of 1877, upon which question no opinion is at this time expressed.

2. I have had, however, some doubt whether, under the qualified rule stated in Blake v. McClung, supra, the denial to a foreign corporation, subjected to the jurisdiction of the Tennessee courts under the act of 1877 and its amendments, of equal participation in the assets of other foreign corporations, is an unconstitutional deprivation of its rights under the provision of the fourteenth amendment that no state shall deny to any person within its jurisdiction the equal protection of the laws. I have, however, concluded on this point that, while a serious question might be raised in the case of a foreign corporation which had previously come within the jurisdiction of the state under valid legislation, this constitutional provision can have no application where the

exclusion from equal rights with Tennessee creditors is contained in the very act under which the foreign corporation complaining of the exclusion has subjected itself to the jurisdiction of the state, upon the ground that, where the state denies such equal right in the very statute exercising its undoubted authority to prescribe the terms upon which foreign corporations shall do business within the state, such denial is constitutional as against all foreign corporations who under such statute are thereafter admitted to do business within the state.

3. Upon the question which I suggested in argument, as to whether the City National Bank was to be regarded as a Tennessee creditor within the meaning of the act of 1877; I have concluded that as the principal place of business under its articles of association was fixed at Johnson City, Tenn., in pursuance of the express provisions of the national banking act (Rev. St. § 5134 [U. S. Comp. St. 1901, p. 3454]), it is to be deemed a resident of Tennessee within the meaning of the act of 1877. Furthermore, it was so treated in the proceedings before the referee, and is so described by the receivers in their petition for review, and, I think, correctly.

4. It is also urged in behalf of petitioners that, although section 64b (5) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]) provides that in the administration of the bankrupt's estate priority shall be given to "debts owing to any person who by the laws of the state or the United States is entitled to priority," the provision of the act of 1877 should be regarded as an insolvency law in reference to foreign corporations, which was superseded by the federal bankruptcy act, and that hence the priorities which it gives should not be recognized. While, however, it is true that the enactment of the federal bankruptcy act superseded all state insolvency or bankruptcy laws relative to persons or acts declared by the Congress to be subjects of bankruptcy, so that no further proceedings could be had under such state laws (1 Remington on Bankruptcy, p. 993, § 1628), yet this rule relates merely to the administration of the state laws in proceedings in the state courts, and does not prevent the enforcement in the federal bankruptcy proceedings of any general priorities recognized by the state laws, where such priorities are conferred by the state statutes as substantive rights of priority not dependent upon the resort to particular remedies accessible only in proceedings in the state courts, and where such priorities are not in conflict with the express priorities declared by the federal bankruptcy act itself or otherwise in conflict with its provisions. 2 Remington on Bankruptcy, p. 1346 et seq., §§ 2194, 2198. Furthermore, the rule relied on by petitioners can have no application to the statutes in question, which are not, strictly speaking, state insolvency laws within the general rule of suspension, but merely statutes prescribing the conditions upon which foreign corporations may enter the state for purposes of business.

5. I am of the opinion, however, that the referee was in error in allowing the claim of the bank priority over the claim of the receivers of the Uptegrove Company for the item of $374.10, arising out of services rendered the bankrupt after they had been appointed receivers of the Uptegrove corporation by an expert accountant in their employment. This item is not a claim of the Uptegrove corporation, but is a

claim of the receivers, who appear from this record, inferentially at least, to be citizens and residents of the state of New York; and, in so far as the Tennessee statute would give Tennessee creditors priority over such claim, its provisions would be unconstitutional under the decision in Blake v. McClung.

An order will accordingly be entered, modifying the order of the referee in so far as priority is given to the claim of the bank over the claim of the receivers under the above-mentioned item of $374.10, but confirming the order of the referee allowing the claim of the bank priority over that of the receivers in all other respects.