STONEGA COKE & COAL COMPANY *v.* SOUTHERN STEEL
COMPANY.

(*Knoxville.* September Term, 1910.)

1. **CORPORATIONS.** Process may be served upon officers or
   agents of foreign corporations as well as domestic corporations.

The statute (Shannon's Code, secs. 4539-4541), providing for per-
   sonal service on officers or agents of corporations, applies to
   foreign as well as domestic corporations. (*Post, p.* 435.)

Code cited and construed: Secs. 4539-4541 (S.); secs. 3536-3538
   (M. & V.); secs. 2831-2833 (T. & S. and 1858).

Cases cited and approved: Railroad v. Walker, 9 Lea, 475; Peters
   v. Neely, 16 Lea, 275; Holland v. Railroad, 16 Lea, 414.

2. **FOREIGN CORPORATIONS.** Attachment will lie at the in-
   stance of creditors to reach their property within the jurisdic-
   tion of the court.

An attachment may be sued out at the proper instance of credi-
   tors against a foreign corporation to reach its property and
   assets within the jurisdiction of the court.

Code cited and construed: Secs. 5211, 4539-4541 (S.); secs. 4192,
   3536-3538 (M. & V.); secs. 3455, 2831-2833 (T. & S. and 1858).

Acts cited and construed: Acts 1835-36, ch. 43; Acts 1837-38, ch.
   166; Acts 1843-44, ch. 29; Acts 1845-46, ch. 55; Acts 1849-50, ch.
   55; Acts 1851-52, ch. 136; Acts 1859-60, ch. 89.

3. **STATUTES.** Acts 1877, ch. 31, sec. 3, as amended by Acts
   1891, ch. 122, sec. 4, was not repealed by implication by Acts
   1895, ch. 81, sec. 3, and foreign corporations may become do-
   mesticated corporations.

The statute (Acts 1877, ch. 31, sec. 3, as amended by Acts 1891,
   ch. 122, sec. 4), to the extent it domesticated foreign corpora-
   tions upon their compliance with the conditions stated was not
   repealed by implication by Acts 1895, ch. 81, sec. 3, amending

Coke & Coal Co. v. Steel Co.

said section 4 of said act of 1891, upon the ground that said section 3 of said act of 1895, omitted the phrase, "it [the corporation] shall then be, to all intents and purposes, a domestic corporation," found in said section 4 of said act of 1891, for the reason that the first and third sections of the said act of 1877 declared foreign corporations complying with the statute to be corporations of this State. (*Post, pp.* 435-443.)

Acts cited and construed:   Acts 1877, ch. 31; Acts 1891, ch. 122; Acts 1895, ch. 81.

4. SAME. Amendment operates as if incorporated in the amended statute when it was enacted, as to any future action.

The amendment of a statute operates precisely as if the subject-matter of the amendment had been incorporated in the prior amended statute at the time of its enactment, so far as regards any action after the amendment is made. (*Post, p.* 439.)

5. SAME. Later statute covering same subject repeals a former statute by implication.

Where two statutes cover the same subject-matter, the last enactment repeals the former by implication. (*Post, p.* 440.)

Cases cited and approved:   Druggist Cases, 85 Tenn., 449; Terrell v. State, 86 Tenn., 523; Maxwell v. Stuart, 99 Tenn., 409.

6. SAME. Repeals by implication are not favored; Irreconcilable repugnancy, or comprehension of all legislation on the subject, is requisite.

Repeals by implication are not favored, and a later statute will not be construed to repeal a former statute relating to the same subject-matter, unless they are irreconcilably repugnant, or the later statute is evidently intended to supersede all other legislation on the subject and to comprise in itself the sole and complete legislation on the subject. (*Post, pp.* 440, 441.)

Case cited and approved:   Chattanooga v. Neely, 97 Tenn., 527.

7. SAME. To be construed so as to give effect to all provisions, and to harmonize with prior laws.

Coke & Coal Co. v. Steel Co.

Statutes should be construed, if possible, so as to give effect to all their clauses and provisions; and each statute should receive such construction as will make it harmonize with the preexisting body of the law. (*Post, p.* 441.)

8. **SAME. Provision in body of statute within the subject expressed in the title of both the amending and amended statutes as to foreign corporations, so as to be constitutional.**

Where a statute (Acts 1891, ch. 122) is entitled "An act to amend chapter 31 of the Acts of 1877, declaring the terms on which foreign corporations, organized for mining or manufacturing purposes, may carry on their business . . . in this State, so as to make the provisions of said act apply to all foreign corporations that may desire to own property or to do business in this State," while the former statute (Acts 1877, ch. 31) so sought to be amended was entitled "An act to declare the terms on which foreign corporations organized for mining or manufacturing purposes, may carry on their business . . . . in this State," the amending statute is not unconstitutional because it contains a provision in its fifth section that where a foreign corporation has no agent in the State upon whom process may be served, it may be proceeded against by attachment and publication; for said provision is within the subject expressed in the title of both the amending and amended acts, and does not violate the constitutional provision (art. 2, sec. 17) requiring the subject of a statute to be expressed in its title. (*Post, pp.* 443, 444.)

Acts cited and construed:  Acts 1877, ch. 31; Acts 1891, ch. 122.

Constitution cited and construed:  Art. 2, sec. 17.

9. **SAME. Generality of title is not objectionable, if not made a cover to incongruous and disconnected legislation.**

The generality of the title of a statute is not objectionable, so long as it is not made a cover to legislation incongruous in itself and which by no fair intendment can be considered as having a necessary or proper connection with the title. (*Post, p.* 444, 445.)

Coke & Coal Co. v. Steel Co.

Cases cited and approved: Cannon v. Mathes, 8 Heis., 504; Frazier v. Railroad, 88 Tenn., 138; Ryan v. Terminal Co., 102 Tenn., 111; Samuelson v. State, 116 Tenn., 470.

10. **FOREIGN CORPORATIONS. May be domesticated or made corporations of this State by legislation.**

The legislature has power to provide by statute for the domestication of foreign corporations, or for making corporations, organized and existing under laws of other States corporations of this State in regard to property, matters and acts within its territorial jurisdiction. (*Post*, pp. 445-450.)

Cases cited and approved: Young v. Iron Co., 85 Tenn. 189; Railroad v. Wheeler, 1 Black, 286, 297; Railroad v. Harris, 12 Wall., 65, 82; Railroad v. Whitton, 13 Wall., 270; Railroad v. Vance, 96 U. S., 458; Railroad v. Alabama, 107 U. S., 581; Clark v. Barnard, 108 U. S., 436; Stone v. Loan & Trust Co., 116 U. S., 307; Graham v. Railroad, 118 U. S., 161; Martin v. Railroad, 151 U. S., 673; Railroad v. James, 161 U. S., 545; Railroad v. Trust Co., 174 U. S., 552; Bernhardt v. Brown, 119 N. C., 506; Debnam v. Telephone Co., 126 N. C., 831.

11. **APPELLATE JURISDICTION. Liability of surety on replevy bond in attachment suit not determined in the lower court will not be determined by the supreme court.**

Where no question was raised in the court below as to the liability of the surety on the replevy bond in an attachment suit for the reception of the attached property, and no ruling was made with regard to him, and no decree was made fixing his status in the case, and where the only decree below was one adjudging that the attachment was wrongfully sued out, and quashing and abating the same, and referring the cause to the clerk and master to take and account and report the amount of indebtedness due the complainant, the question of the liability of the defendant and his said surety on the replevy bond will not, upon appeal, be determined by the supreme court. (Post, pp. 450, 451.)

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.
T. M. McCONNELL, Chancellor.

A. W. GAINES, for complainant.

CHAMBLISS & CHAMBLISS and WILLIAMS & LANCASTER,
for defendant.

MR. JUSTICE BEARD delivered the opinion of the Court.

This is an original attachment suit begun by the
complainant in the chancery court of Hamilton county
against the defendant to recover a large indebtedness
alleged to be due on open account. The ground set up
in the bill for the attachment was that the defendant
was a corporation organized under the laws of Ala-
bama, and a nonresident of this State. A writ of at-
tachment was issued, which, on the same day, was
levied on the property of the defendant. Immediately
thereafter the defendant executed a replevy bond and
regained possession of the property levied on. Subse-
quent thereto the defendant filed a plea in abatement
in the words and figures following: "The defendant,

Southern Steel Company, for plea in abatement to the original attachment and suit in this cause says that at the time this suit was brought and the attachment sued out herein, on the ground of nonresidence, and for many months previous thereto, the said defendant had an office and agents, superintendents, servants, clerks, bookkeepers, and representatives, in Hamilton county, the county in which the suit was brought, and was conducting an extensive business and operating a large blast furnace in said county; that these facts were well known to the complainant, its agents and representative; and that this suit grows out of the business so carried on in said county of Hamilton. And defendant further says that, while it is a corporation chartered by the State of Alabama, before the bringing of this suit it had filed a copy of its charter with the secretary of state of Tennessee, and had in all respects complied with the laws of Tennessee prescribing the terms upon which foreign corporations may become incorporated in and do business in Tennessee, and this defendant, therefore, says that it was not subject to suit by original attachment and publication as a nonresident, and that, no proper service having been made upon the defendant, this court is without jurisdiction; wherefore, defendant prays that said suit be abated and quashed, the property released, and said suit dismissed." Another ground of abatement was alleged in the plea, but, as it was afterwards abandoned in the progress of the cause, it need not be set out.

On the same day, and contemporaneously with the filing of the plea, an answer was filed denying that the defendant was indebted to the complainant to the extent claimed by the bill. Afterwards personal process was issued and served on a resident officer of the defendant.

The proof showing the averments of defendant's plea to be true in fact, on the hearing the chancellor decreed that the attachment was wrongfully sued out, and dismissed the bill, in so far as it prayed for the writ; and, also, that complainant was entitled to recovery of defendant, but not in the full amount claimed. To ascertain the real indebtedness due, a reference was ordered. From this decree complainant has appealed to this court.

The first assignment of error made by complainant is to the action of the chancellor in decreeing the attachment void and of no effect.

The counsel of complainant in their printed argument have presented a carefully prepared historic review of the statutes of the State, in which is shown the gradual development of the law of attachment, beginning with chapter 43 of the Acts of 1835-36. We deem it unnecessary to follow this review, inasmuch as the statutes regulating the issue of a general attachment were brought forward into section 3455 of the Code of 1858 (section 5211, Shannon's Code). Among the grounds upon which a writ of attachment may be had is that "the debtor or defendant resides out of the State." Unquestionably, under this section, as could

have been done under the earlier statutes, in a case of a nonresident corporation, an attachment might issue at the proper instance of its creditors to reach its assets lying within the jurisdiction of the courts, and sections 2831 to 2833 of the Code of 1858 (sections 4539 to 4541, Shannon's Code) no more conflict with or modify it than did chapter 55 of the Acts of 1845-46, chapter 136 of the Acts of 1849-50, chapter 136 of the Acts of 1851-52, or chapter 89 of the Acts of 1859-60, modify or repeal by implication chapter 43 of the Acts of 1835-36, chapter 166 of the Acts of 1837-38, or chapter 29 of the Acts of 1843-44.

In the cases provided for in the Code, "the attachment and publication are in lieu of personal service," while sections 2831 to 2833 of the Code of 1858 (sections 4539-4541, Shannon's Code) provide for personal service on officers or agents of corporations, and apply to foreign as well as domestic corporations. *Railroad* v. *Walker,* 9 Lea, 475; *Peters* v. *Neely,* 16 Lea, 275; *Holland* v. *Railroad Co.,* 16 Lea, 414.

Up to 1877, as a matter of comity, and without special legislation, foreign corporations were admitted to do business in this State. By chapter 31 of the Acts of that year the legislature made a radical departure, by affixing terms and conditions to their entry into Tennessee for the purpose of doing business, or acquiring or disposing of real estate, but confined the scope of the act to foreign corporations organized for mining and manufacturing purposes. By the first section of this act it is provided "that corporations chartered or or-

ganized under the laws of other States or countries, for the purpose of mining ores or coal, or quarrying stone or minerals . . . or carrying on works for manufacturing of metals . . . may become incorporated in this State, and may carry on in this State the business authorized by their respective charters . . . upon the terms and conditions . . . herein declared." By the second section it is enacted that a corporation, within the purview of the first section, "desiring to carry on business in this State must file in the office of the secretary of State a copy of its charter . . . certified in the manner directed by law . . . and must cause an abstract of the same to be recorded in the office of the register of each county in which such corporation proposes to carry on its business, or to acquire lands." The third section is as follows: "That such corporations shall be deemed and taken to be corporations of this State and shall be subject to the jurisdiction of the courts of this State, and may sue and be sued therein in the mode and manner that is, may be, by law directed in the case of corporations created or organized under the laws of this State."

Thus it will be seen that the first section provides in terms that corporations for whose benefit the act was intended, taking advantage of it, "might become incorporated in this State" upon the terms and conditions and in the manner prescribed; while the second section sets out the terms and conditions on which and the manner in which this may be done; and the third in ex-

press terms declares "that such corporations shall be deemed and taken to be corporations of this State."

Thus stood our legislation as to foreign corporations until the passage of the statute in the year 1891, chapter 122 of the Session Acts of the general assembly of that year. This act, as its caption declared, was amendatory of the act of 1877. By its first section it was enacted that chapter 31 of the Acts of 1877 be so enlarged that its provision should apply to all foreign corporations organized "for any purpose whatever." The second section, in substance, repeats the terms, conditions, etc., as prescribed by the act of 1877 for the entry of such corporations into the State; the third section makes it unlawful, and fixes a penalty, for any such corporation to do, or attempt to do, business or acquire property in this State without complying with the terms prescribed. The fourth is in the following words: "When a corporation complies with the provisions of this act, it shall then be, to all intents and purposes, a domestic corporation, and may sue and be sued in the courts of this State, and is subject to the jurisdiction of the courts of the State just as though it were created under the laws of the State."

Thus, it will be seen the legislature by this amendatory act opened the door to all foreign corporations and declared that any such corporation, coming into the State and complying with these statutory requirements, shall become "to all intents and purposes a domestic corporation." Conceding the power of the legislature to pass such statutes, it would be difficult to

find language which would more clearly indicate its intention to thoroughly domesticate such corporations.

Coming now to the act of 1895, chapter 81 of the published Acts of that year, we find from its caption that it was intended to amend sections 2, 3, and 4 of chapter 122 of the Session Acts of 1891. This statute, so far as it is pertinent to this controversy, is as follows:

"Sec. 1. Be it enacted by the general assembly of the State of Tennessee, that section 2 of an act passed March 21, 1891, being chapter 122 of said Acts, be so amended as to read as follows: 'that each and every corporation created or organized under and by virtue of any government other than of the State, for any purpose whatever, desiring to own property or carry on business in this State of any kind or character, shall first file in the office of secretary of State a copy of its charter.'"

"Sec. 3. Be it further enacted, that section 4 of said act, passed March 21, 1891, be so amended as to read as follows: 'That when a corporation complies with the provisions of this act said corporation may then sue and be sued in the courts of this State, and shall be subject to the jurisdiction of this State as fully as if created under the laws of the State of Tennessee.'"

It will be noted that the difference between this act and that amended is that under the first section of the Act of 1895 the foreign corporation entering the State to do business is sufficiently equipped upon filing an authenticated copy of its charter with the secretary of

State, no longer being required, as in the Act of 1891, to file abstracts of its charter in the offices of the registers of the various counties in which it did business; by the second for the unauthorized exercise of its franchises by such corporation the penalties were increased; and the third section omits the phrase found in the fourth section of the act amended, "it shall then be to all intents and purposes a domestic corporation."

It is argued that the omission of this phrase indicates the purpose of the legislature to abandon the policy of domesticating a foreign complying corporation, and that as a matter of law this was accomplished. As to the first of these propositions, it may be said that it is difficult to discover such purpose, in the language that, when such a corporation complied with the provisions of the act, "it shall be subject to the jurisdiction of this State as fully as if it were created under the laws of Tennessee." Should we grant (which we do not), however, that this was its purpose, we are satisfied it was not accomplished.

We have already seen that chapter 122 of the Acts of 1891 was amendatory of chapter 31 of the Session Acts of 1877, and chapter 81 of the Acts of 1895 of chapter 122 of those of 1891. It is well settled that "an amendment of a statute by a subsequent act operates precisely as if the subject-matter of the amendment had been incorporated in the prior act at the time, so far as regards any action after the amendment is made." Black on Interpretation of Laws, p. 357, and cases cited.

So, under this canon of construction, we have the Act of 1895 incorporated with the Act of 1891; the substituted sections taking the place of those in the act amended, and that carried back and becoming a part of the original act of 1877, in so far as there is no conflict between the provisions of the several acts. Reading that act, we find, as has already been stated, that it provided that a foreign corporation, by complying with the terms and conditions prescribed, "may become incorporated in this State," and that upon such compliance the corporation "shall be deemed and taken to be a corporation of this State." There is found in the later amendatory act no express words repealing these provisions, and the question is: Is there a repeal by necessary implication of them?

It is insisted by complainant that this question must be answered in the affirmative. The argument of its counsel is that section 3 of the act of 1895 is a composite of section 3 of the act of 1877 and section 4 of the act of 1891, and takes the place of both, and is today the whole law on this branch of the subject. This insistence is rested on the familiar rule that, when two distinct enactments cover the same subject-matter, the last act will be held to repeal by implication the prior. Many cases in our reports illustrate and apply this rule, among which are the *Druggist Cases*, 85 Tenn., 449, 3 S. W., 490; *Terrell* v. *State*, 86 Tenn., 523, 8 S. W., 212; *Maxwell* v. *Stuart*, 99 Tenn., 409, 42 S. W., 34. However, it is equally well settled that repeals by implication are not favored, and the former act will not

be held to be repealed by later enactment, unless there is irreconcilable repugnancy between the two, or the new law is evidently intended to supersede all prior acts on the matter in hand and comprise in itself the sole and complete legislation on the subject. Black on the Interpretation of Laws, p. 112; *Chattanooga* v. *Neely,* 97 Tenn., 527, 37 S. W., 281, and cases there cited.

Another rule of interpretation, which is but a corollary of that just stated, grows out of the duty of the courts to harmonize the laws constituting a system, if this be possible. Mr. Black, in his work already referred to, in a headnote to section 32, dealing with this subject, lays it down that "statutes should be construed, if possible, so as to give effect to all their clauses and provisions; and each statute should receive such a construction as will make it harmonize with the preexisting body of the law."

In other words, every later statute, forming part of a system such as has been created by the legislature of this State, with regard to the entry of foreign corporations, their domestication, and control, beginning with that of 1877, is to be considered with reference to the preexisting body of that law to which it is added and of which it forms a part. To do otherwise is to miss the legislative intent, and possibly, do violence to it.

Having announced these general rules, we will, in their light, briefly come to the examination of the acts in question. In the first place, there is no express

repugnancy between them. If the provision with which we are dealing is repealed, it is because it clearly appears that the provision in the Act of 1895 was intended as a substitute, in its entirety, for section 4 of the Acts of 1877. In determining how this is, it is well to notice that section 3 of the act of 1895 is made, by substitution, to take the place of section 4 of the act of 1891. No reference is made to, and no purpose is avowed to, modify or alter in any respect section 4 of the act of 1877. Comparing, further, the language of section 3 of the act of 1895 with that of section 3 of 1877, it will be found that the two substantially correspond, save that the words "that such corporation (that is, those complying with the terms imposed in section 2) shall be deemed and taken to be corporations of this State," found in section 3 of the act of 1877, are omitted from section 3 of the act of 1895. Undoubtedly, the reenactment by this section of the latter act, substantially, of the provisions of section 3 of the prior act is *pro tanto* a repeal of that provision; but there is nothing to indicate that the legislature intended to repeal the most important phrase in the section of the act of 1877, which, we have just quoted. It is true, as we think, that the two sections may be treated as composite. In other words, the composite section will then read as follows: "Such corporations shall be deemed and taken to be corporations of this State, and said corporations may sue and be sued in the courts of this State, and shall be subject to the jurisdiction of the State as fully as if created under the laws of Tennessee."

This construction harmonizes the amendatory act of 1895 with the avowed intention of the legislature in the first section of the act of 1877, that a foreign corporation, such as was provided for, coming into the State "may become incorporated in this State" by complying with the terms prescribed. , Adopting the view pressed by complainant, however, this provision would be left as an idle legislative promise, without a possibility of being made effectual. So, we are not prepared to hold that the later act covers the whole field occupied by the earlier one.

Before discussing the power of the State to domesticate a foreign corporation and the effect of our legislation on that subject, we deem it proper to refer to the insistence of defendant's counsel that chapter 122 of the Acts of 1891 is unconstitutional because violative of section 17 of article 2 of our constitution. In section 5 of this statute it is provided that: "When such corporation (foreign complying) has no agent in this State upon whom process may be served, . . . then it may be proceeded against by an attachment . . . and publication." It is argued that there is nothing in the caption of the amendatory act, or of the act amended, to give notice that such a provision would be found in the body of the act in question. The caption of the act of 1877 is as follows: "An act to declare the terms on which foreign corporations, organized for mining and manufacturing purposes may carry on their business, and purchase, hold and convey, real and personal property in this State." If the provision, just set out above,

had been found in the body of that act, could there be any doubt as to its constitutional inclusion? Would not the contention be sound that this was one of the terms imposed on such a corporation, and that, upon complying with all other of these terms in entering the State to do business, yet, if it lacked an agent within our borders upon whom process could be served, then its property would be liable to attachment. We think undoubtedly so. This is equally true as to the caption of the act of 1891, embracing the provision criticized, which is as follows: "An act to amend chapter 31 of the Acts of 1877, declaring the terms on which foreign corporations, organized for mining and manufacturing purposes, may carry on their business and purchase, hold and convey real and personal property in this State, so as to make the provisions of said act apply to all foreign corporations that may desire to own property, or to do business in this State."

We do not deem it necessary, elaborately, to consider this contention, as we think it disposed of by the principle announced by Judge Cooley, in his work on Constitutional Limitations, that "the generality of the title is no objection to it, so long as it is not made a cover to legislation incongruous in itself and which by no fair intendment can be considered as having a necessary or proper connection"—a principle applied by this court in cases running through many of our reports, among which are *Cannon* v. *Mathes,* 8 Heisk., 504; *Frazier* v. *Railway Co.,* 88 Tenn., 138, 12 S. W., 537; *Ryan* v. *Terminal Co.,* 102 Tenn., 111, 50 S. W., 744, 45 L. R.

A., 303; and *Samuelson* v. *State,* 116 Tenn., 470, 95 S. W., 1012, 115 Am. St. Rep., 805.

A further insistence of complainant is that a corporation can have, in legal contemplation, but one place of residence, and that within the territory of its creation. Putting this insistence into another form, it is said that a corporation must dwell in the place of its creation and cannot migrate to another sovereignty.

An opposite view was taken and enforced in *Young* v. *South Tredegar Iron Co.,* 85 Tenn., 189, 2 S. W., 202, 4 Am. St. Rep., 752. The facts of that case are too familiar to be repeated here. It is sufficient to say that the controversy was over shares of stock levied on and sold by an attaching creditor in one of the courts in this State, in a corporation chartered by the State of Missouri, but found by the court, after complying with the provisions of chapter 31 of the Acts of 1877, carrying on business of manufacturing iron in this State, with its books, officers, and agents here and, in fact, "with its whole tangible and ponderable substance in Tennessee" within the jurisdiction of that court.

This court recognized the fiction often announced in reporting cases and in text-books that "a corporation dwells only in the State of its creation and cannot migrate therefrom," but at the same time quoted with approval from *Railroad* v. *Harris,* 12 Wall., 82 (20 L. Ed., 354), the following: "Nor do we see any reason why one State may not make a corporation of another State, as there organized and conducted, a corporation of its own, *quo ad hoc* any property within its

jurisdiction. That this may be done was distinctly held in *Ohio & Miss. Railroad Co.* v. *Wheeler*, 1 Black, 297 [17 L. Ed., 130."] Also, the following: "It is well settled that corporations of one State may exercise their faculties in another so far and on such terms and to such extent as may be permitted by the latter. The question is always one of legislative intent and not of legislative power, or legal possibility."

Following the clear intimation of that opinion, and upon reasoning we think unanswerable, it was held by this court that "the legislation (the act of 1877) by which the corporations of other States are made corporations of this State is clearly within legislative power," and that having complied with the provisions of the act, and in view of its ownership of property, and the other evidences, hereinbefore set out, of its having domesticated itself, that "the fiction that the corporate entity is in Missouri is overthrown by the fact that it is likewise a domestic corporation and stands in all particulars as any other person." This case has been often referred to, and the soundness of its conclusion, when applied to statutes such as ours, and under the conditions shown existing in that case, or in the present, has nowhere, so far as we have discovered, been questioned. It has been often referred to by this court in opinions published and unpublished. It stands as a law of this State today unmodified by any subsequent holding of this court.

The principle announced in that case has been recognized by the supreme court of the United States in

many cases, including the two mentioned in the course of the opinion. In *Louisville, etc., R. R. Co.* v. *Louisville Trust Co.*, 174 U. S., 552, 19 Sup. Ct., 817, 43 L. Ed., 1081, it is said: "This court has often recognized that a corporation of one State may be made a corporation of another State by the legislature of that State, in regard to property and matters within its territorial jurisdiction." *Ohio & Miss. R. R. Co.* v. *Wheeler*, 1 Black, 286, 17 L. Ed., 130; *Baltimore & Ohio R. R. Co.* v. *Harris*, 12 Wall., 65, 20 L. Ed., 354; *Chicago & Northwestern R. R. Co.* v. *Whitton*, 13 Wall., 270, 20 L. Ed., 571; *Indianapolis & St. Louis R. R. Co.* v. *Vance*, 96 U. S., 458, 24 L. Ed., 752; *Memphis & Charleston R. Co.* v. *Alabama*, 107 U. S., 581, 2 Sup. Ct., 432, 27 L. Ed., 518; *Clark* v. *Barnard*, 108 U. S., 436, 2 Sup. Ct. 878, 27 L. Ed., 780; *Stone* v. *Farmers' Loan & Trust Co.*, 116 U. S., 307, 6 Sup. Ct., 334, 388, 1191, 29 L. Ed., 636; *Graham* v. *Boston, etc., R. Co.*, 18 U. S., 161, 6 Sup. Ct., 1009, 30 L. Ed., 196; *Martin* v. *Baltimore & Ohio Co.*, 151 U. S., 673, 14 Sup. Ct., 533, 38 L. Ed., 311.   But this court has repeatedly said that in order to make a corporation, already in existence under the laws of one State, a corporation of another State, 'the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State, or by the legislature, as such an allegiance as a State corporation owes to its creditor.   The mere grant of privileges or powers to it as an existing corporation without more does not do this.'   . . ."

Coke & Coal Co. v. Steel Co.

In nearly all the cases enumerated in this excerpt, while recognizing the rule distinctly that a foreign corporation may be domesticated by the legislature of another State than that of its creation, there was more or less of debate as to the effect of such legislation upon the local jurisdiction of the federal court. In *St. Louis & San Francisco Ry. Co.* v. *James,* 161 U. S., 545, 16 Sup. Ct., 621, 40 L. Ed., 802, while giving recognition to the rule that a corporation of one State may be made a corporation of another State by the legislature of that State, in regard to property and acts within the territorial jurisdiction, it was held that the presumption that the corporation is composed of citizens of the State which created it accompanies such corporation when it does business in another State, and it may sue or be sued in the federal courts in such other State, as a citizen of the State of its original creation. This question, if left in any doubt by the case last referred to, was finally put at rest in *Louisville, etc., R. Co.,* v. *Louisville Trust Co.,* supra, where it was distinctly announced that a corporation created by a State remains a citizen of that State for the purposes of the jurisdiction of the federal courts, although created a corporation by the laws of another State.

In Thompson on Corporations (2 Ed.), vol. 5, sec. 6629, the author says: "It is well settled that a corporation of one State may be made a corporation of another State by the legislature of that State, in regard to property and acts within its territorial jurisdiction, but in order to do so the language of the statute must

imply creation or adoption in such form, as to confer the power usually exercised over corporations by the State, or by the legislature, and such allegiance as a State corporation owes to its creator." Many authorities are cited, which upon examination are found to support the text.

As a matter of course, as is remarked by the author, in the paragraph following that just quoted, "the mere grant to a foreign corporation of the right to hold property, or do business in the State, does not make it a domestic corporation. Neither is domestication accomplished by the designation by the corporation of an agent or attorney upon whom process may be served; nor by filing its charter with the secretary of State, or other designated State officer; nor by the occupancy of premises and the payment of taxes on its property in the domestic State; nor by the purchase or lease of the property of a domestic corporation. Notwithstanding these acts, the corporations are still subject to attachment as foreign corporations.  .  .  ." Such a grant is but the legislative expression of comity without a change of corporate status, and such acts are entirely consistent with the fact that in all respects it is still a foreign corporation. It requires, in other words, such language as is found in our statute to domesticate it. The North Carolina statute is very similar to ours, in that it permits a foreign corporation to become a domestic corporation by filing with the secretary of State copies of the charter of the corporation and its by-laws

duly authenticated. When this is done, it is held, by the supreme court of that State, that it becomes a domestic corporation and not a mere licensee to do business in the State. *Bernhardt* v. *Brown,* 119 N. C., 506, 26 S. E., 162, 36 L. R. A., 402; *Debnam* v. *Southern Bell Tel. Co.,* 126 N. C., 831, 36 S. E., 269, 65 L. R. A., 915.

We have examined many of the authorities relied on by complainant to sustain his insistence that it is beyond legislative power to domesticate a foreign corporation, and find they involve a construction of statutes dissimilar from ours, or else controversies impertinent to that here presented. Even had it been found that these cases, or any considerable number of them, support the contention of complainant, we would not be disposed to follow them, in view of the clearly announced principle to the contrary found in the South Tredagar Iron Company Case, fortified, as it is, by the authority of the supreme court of the United States. It would, therefore, unnecessarily consume time, which cannot be afforded, and occupy space altogether unwarranted in this opinion, to pass these cases in review.

It is further contended by the complainant that, even if wrong in the insistence just disposed of, by the execution of the replevy bond and the recaption by the defendant of the attached property, the attachment, having served its purpose of impounding the property, was discharged, and defendant and surety became liable, under the statute and by the terms of the bond, for such decree as might be rendered against the defendant. This claim is prematurely made, and we therefore inti-

mate no opinion with regard to it. No question was raised in the court below as to the liability of the surety on the bond, and no ruling was made with regard to him. In fact, there was no decree fixing his status in the case. So far as the attachment is concerned, the full scope of the chancellor's decree is found in this clause: "The court adjudges and decrees that the attachment herein issued and levied was wrongfully sued out, is void and of no effect, and the bill herein is dismissed in so far as the attachment is therein prayed and said attachment is quashed and abated." No final decree was rendered against the defendant, the court finding that the defendant was indebted to the complainant in and about the matters alleged in the bill; "but, it is not clearly appearing to the court" what was "the exact and correct amount due the complainant," the cause was referred to the clerk and master to take an account and report at the next term of the court. Thus it will be seen, even if liable, yet the amount for which the surety can be held is left indeterminate. In this condition of the record, the question presented is purely academic.

From our examination, we think the chancellor was right in referring the case to the clerk and master, and his decree is in all things affirmed.