CRENSHAW *v.* TEXOKOLA PECAN SHELLERS, INC., *et al.*

(*Nashville,* December Term, 1936.)

Opinion filed February 27, 1937.

274

GILLILAND, TAYLOR & GILLILAND, of Memphis, for appellant.

CHARLES M. BRYAN, L. R. FEATHERSTON, and BEARMAN & BEARMAN, all of Memphis, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

From a decree in favor of the complainant, defendants appealed. The Court of Appeals modified the decree of the chancellor. The case is before us on petition for writ of *certiorari*.

Texokola Pecan Shellers, Inc., was a Texas corporation engaged in the business of shelling pecans and having its plant in Memphis.

J. W. Allen & Co. was an Illinois corporation engaged in the manufacture and sale of equipment and food supplies for bakers, caterers, and confectioners. Among other things, it bought and sold shelled pecans.

Both these corporations were qualified to do business .

in Tennessee. The Texokola Company qualified March 29, 1930. The Allen Company qualified July 6, 1931. Both corporations complied with the provisions of chapter 13 of the Acts of the Extra Session of 1929 regulating the admission of foreign corporations to do business in this state.

The relations between the two corporations were close and by March 24, 1933, the Texokola Company had become indebted to the Allen Company in the sum of $31,-000. On that date the Texokola Company executed a note for $31,000 in favor of the Allen Company and also executed a chattel mortgage to secure this note on its machinery and equipment.

About a year later, in March, 1934, the Texokola Company, having become further involved, decided to go out of business and transferred and assigned to the Allen Company its property "merchandise, consisting of warehouse stocks and other assets" on account of its indebtedness to the Allen Company.

Meanwhile the Texokola Company had become indebted to complainant Crenshaw. It rented from Crenshaw the premises in which it did business in Memphis. On March 31, 1934, complainant obtained judgment against the Texokola Company and, having learned that the machinery and equipment of the Texokola Company was being dismantled and removed, he filed his bill on April 2, 1934, seeking an attachment of the property, and a decree subjecting the property to the amount due him. The Allen Company was made a party defendant.

The chancellor decreed that the mortgage by the Texokola Company of its machinery and equipment to the Allen Company was a colorable device resorted to for the purpose of hindering, delaying, and defrauding credi-

tors of the former company. He further decreed that the transfer by the Texokola Company, in March, 1934, of its assets to the Allen Company was a fraud upon its creditors. Both these conveyances were held void by the chancellor. The Court of Appeals concurred in these conclusions, and this concurrent finding is not challenged in this court.

The chancellor further held that, since the Texokola Company and the Allen Company were both foreign corporations and the indebtedness of the former to the latter arose out of transactions outside the state, the complainant Crenshaw, as a resident citizen of the state, was entitled to priority over the Allen Company in the application of the assets of the Texokola Company to its indebtedness. This ruling of the chancellor was reversed by the Court of Appeals and the propriety of this action of the Court of Appeals is the question presented to this court.

Chapter 31 of the Acts of 1877 was entitled, "An Act to declare the terms on which foreign corporations organized for mining or manufacturing purposes may carry on their business, and purchase, hold and convey real and personal property in this State." The act provided for the filing of the charters of foreign corporations in the office of the Secretary of State, and section 3 of the act was in these words:

"That such corporations shall be deemed and taken to be corporations of this State, and shall be subject to the jurisdictions of the Courts of this State, and may sue and be sued therein in the mode and manner that is, or may be, by law directed in the case of corporations created or organized under the laws of this State."

Section 5 of the Act of 1877 was as follows:

"That the corporations, and the property of all corporations coming under the provisions of this Act, shall be liable for all the debts, liabilities and engagements of the said corporations, to be enforced in the manner provided by law, for the application of the property of natural persons to the payment of their debts, engagements, and contracts. Nevertheless creditors who may be residents of this State shall have a priority in the distribution of assets, or subjection of the same, or any part thereof, to the payment of debts over all simple contract creditors, being residents of any other country or countries, and also over mortgage or judgment creditors, for all debts, engagements and contracts which were made or owing by the said corporations previous to the filing and registration of such valid mortgages, or the rendition of such valid judgments. But all such mortgages and judgments shall be valid, and shall constitute a prior lien on the property on which they are or may be charged as against all debts which may be incurred subsequent to the date of their registration or rendition. The said corporations shall be liable to taxation in all respects the same as natural persons resident in this State, and the property of its citizens is or may be liable to taxation; but to no higher taxation, nor to any other mode of valuation, for the purpose of taxation; and the said corporations shall be entitled to all such exemptions from taxation which are now or may be hereafter granted to citizens or corporations for the purpose of encouraging manufactures in this State or otherwise."

The Act of 1877 was amended by chapter 122 of the Acts of 1901, and by chapter 81 of the Acts of 1895, extending its provisions to all foreign corporations and

changing the former act in some other particulars not material to this inquiry.

Section 5 of the Act of 1877, however, was not affected by any subsequent legislation until the enactment of chapter 13 of the Acts of the Extra Session of 1929. The Court of Appeals expressed the opinion that the latter act covered the whole subject of the Act of 1877 and brought about a repeal by implication of the former act. We do not find it necessary to go so far in our decision as did the Court of Appeals.

Chapter 13 of the Acts of the Extra Session of 1929 was entitled, "An Act to prescribe the terms and conditions upon which foreign corporations may be permitted to engage in business in the State of Tennessee." The act provided for the verification of the charters of foreign corporations, the filing of such charters in the office of the Secretary of State, the payment of certain fees, and for other things. Section 4 of the Act of 1929 was in this language:

"That when such foreign corporation shall have duly complied with the provisions of the foregoing section, then and in that event, it shall be entitled to all the privileges, rights, immunities and liabilities of corporations organized and chartered under the laws of this State."

Under section 5 of the Act of 1877, although a foreign corporation had duly qualified under the laws of this state, its creditors who were residents of the state had a priority in the distribution of its assets over all simple contract creditors residents of another state and over mortgage or judgment creditors made or owing by such corporation previous to the filing and registration of such

valid mortgages and the rendition of such valid judgments.

As is well known, the validity of section 5 of the Act of 1877 was sustained by the Supreme Court of the United States in the case of *Blake* v. *McClung,* 172 U. S., 239, 19 S. Ct., 165, 43 L. Ed., 432, insofar as it gave priority to resident creditors over foreign corporations which were creditors, but held invalid insofar as it gave priority to resident creditors over individual creditors, citizens of other states. This on the ground that a foreign corporation was not a citizen within the meaning of section 2 of article 4 of the Federal Constitution providing that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

It seems to us that section 4 of the Act of 1929 was designed to meet the situation existing by reason of section 5 of the Act of 1877 and its construction by the Supreme Court. The Federal Constitution gave to individual citizens of other states the privileges and immunities of the citizens of the several states. This section 4 of the Act of 1929 gives to complying foreign corporations the privileges and immunities of corporations organized and chartered under the laws of this state.

There is an irreconcilable conflict, in our opinion, between section 5 of the Act of 1877 and section 4 of the Act of the Extra Session of 1929. A complying foreign corporation cannot be subordinated and denied equality in the distribution of the effects of its debtor if it is entitled "to all the privileges, rights, immunities and liabilities of corporations organized and chartered under the laws of this State." Neither can a complying corporation, becoming insolvent, be denied the right of equal

distribution of its assets in this state among all its creditors if it is entitled ''to all the privileges, rights, immunities and liabilities of corporations organized and chartered under the laws of this State.''

■ To just what extent the Act of 1929 effected a repeal by implication of the Act of 1877 we are not called on to say. We are satisfied, however, that section 4 of the later act is altogether repugnant to section 5 of the earlier act and to that extent the repeal by implication is clear. ·

■ ''Although a later act may not cover the entire subject-matter of an earlier act, nor purport to provide · a new system, if the. later act is repugnant and irreconcilable on a particular point, it will operate as a repeal by implication to the extent of the repugnance and conflict.'' *Southern Construction Co.* v. *Halliburton,* 149 Tenn., 319, 329, 258 S. W., 409, 412; *Balden* v. *State,* 122 Tenn., 704, 127 S. W., 134; *Bailey* v. *Drane,* 96 Tenn., 16, 33 S. W., 573.

We are referred by complainant to *Stonega Coke & Coal Co.* v. *Steel Co.,* 123 Tenn., 428, 131 S. W., 988, 31 L. R. A. (N. S.), 278; *Adams* v. *Chattanooga Co.,* 128 Tenn., 505, 161 S. W., 1131, and an opinion of Judge Sanford as District Judge in *Re Standard Oak Veneer Co.* (D. C.), 173 F., 103, as being opposed to the conclusion reached herein. All these cases were decided prior to the enactment of chapter 13 of the Acts of the Extra Session of 1929. These cases considered how far complying foreign corporations became residents of this state by reason of such qualification. Under the Act of 1929, so far as the present controversy is concerned, it is immaterial how far complying corporations became residents. If they comply with the provisions of the Act

of 1929, they are entitled "to all the privileges, rights, immunities and liabilities of corporations organized and chartered under the laws of this State," and, as creditors, are on parity with local creditors.

The complainant points out that section 5 of the Act of 1877, notwithstanding the Act of 1929, was carried into the Code enacted by the General Assembly of 1931 at section 4134. Complainant, however, fails to note the connection in which section 5 of the Act of 1877 appears in the Code of 1932 and the context.

Chapter 13 of the Acts of the Extra Session of 1929 is carried into the Code at sections 4118-4129. This part of chapter 6 of the Code is headed "Foreign Corporations." Then comes a subdivision of chapter 6 of the Code headed "Non-Complying Corporations." Under this heading are sections 4130-4135, and it is section 4134 of the Code which brings forward section 5 of the Act of 1877. Section 4130 of the Code, the first section under the heading "Non-Complying Corporations," provides that "such corporations as were qualified to do business in this state prior to December 13, 1929, but which failed or refused to avail of the privilege, within the time, granted by legislative act to appoint an agent for the service of process upon them and to file the certificate provided therefor, on or before June 13, 1930, are not entitled to any of the privileges, rights and immunities granted by the preceding sections which were not possessed by them under preexisting law."

Section 4134, giving priority to resident creditors, refers to "the creditors of such corporations," that is, corporations indicated in section 4130.

Upon authority of *Willis* v. *Mann Construction Co.*, 145 Tenn., 318, 236 S. W., 282, the Court of Appeals

remanded this cause to the court below to be proceeded with as a general creditor's suit and for distribution of the local assets of the Texokola Company, admittedly an insolvent corporation, without discrimination against J. W. Allen & Co., a corporation which has qualified to do business in Tennessee under the provisions of chapter 13 of the Acts of the Extra Session of 1929.

The petition for *certiorari* is denied and the costs awarded as taxed by the Court of Appeals.